### In re John Marshall TUTTLE, Leona Julia Tuttle, Debtors.

#### No. 93–40549–11.

United States Bankruptcy Court, D. Kansas.

Oct. 30, 2000.

Gary H. Hanson, Topeka, KS, for debtor.

Jay D. Befort, Topeka, KS, Katja M. Eichinger, U.S. Department of Justice, Washington, DC, Calvin J. Karlin, Lawrence, KS, Patricia A. Reeder, Topeka, KS, Don C. Staab, Hays, KS, Tanya Sue Wilson, Topeka KS, for creditor.

Leona Julia Tuttle, Gove, KS, pro se.

Joel Pelofsky, Office of United States Trustee, Wichita, KS.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Chief Judge.

This matter is before the Court on the surviving debtor's motion to enforce the discharge she received on confirmation of her chapter 11 plan of reorganization. The Internal Revenue Service ("IRS") opposes the motion. Debtor Leona Julia Tuttle appears by counsel Gary H. Hanson and Wesley F. Smith of Stumbo, Hanson & Hendricks, LLP, Topeka, Kansas. The IRS appears by counsel Jackie N. Williams, United States Attorney for the District of Kansas, and Katja M. Eichinger, Trial Attorney, Tax Division, U.S. Department of Justice. The Court has reviewed the relevant pleadings and heard the arguments of counsel, and is now ready to rule.

## FACTS

The relevant facts are not disputed. The debtors filed a chapter 11 bankruptcy petition in 1993. Appeals of a significant issue delayed progress in the case for a long time. In the interim, Mr. Tuttle died. Finally, Mrs. Tuttle proposed a plan under which she would retain her homestead and its contents and sell substantially all the rest of her property to pay her creditors.

Her plan was confirmed in December of 1999.

When the debtors filed for bankruptcy, they owed the IRS a priority claim and a general unsecured claim. After filing, they incurred postpetition taxes of slightly more than $11,000 as an administrative expense of their case. Under Mrs. Tuttle's liquidating plan, she was to pay the administrative expense taxes as soon as the liquidation was complete. She was to pay the priority claim of $40,586.56, plus post-confirmation interest, from the proceeds of sales of assets and then any remaining balance over a ten-year period. The parties agree that Mrs. Tuttle has now paid the IRS all amounts called for under her plan.

Under 11 U.S.C.A. § 523(a)(1), the priority portion of the debt to the IRS would be nondischargeable. Neither the debtor's counsel nor counsel appearing for the IRS before the plan was confirmed realized that the IRS had been accruing interest against the debtor on the priority portion of the debt for the six years between the time the debtors filed for bankruptcy and Mrs. Tuttle's plan was confirmed. Such interest is commonly referred to as "gap interest." From April 1993 to December 1999, the gap interest accrued against Mrs. Tuttle totaled $30,043.95.

The IRS now contends that the gap interest was not discharged on confirmation of Mrs. Tuttle's plan, and that it may recover the interest from her even though she has paid the IRS all the money called for under her plan. The debtor contends that she received a discharge that covered all of the IRS's prepetition claim, including the gap interest or, if that is not a correct interpretation of the Bankruptcy Code, that the IRS agreed to accept the amount provided by her plan as full payment of its claim.

## DISCUSSION AND CONCLUSIONS

■ Before Congress passed the Bankruptcy Reform Act of 1978,[1] repealing the 1898 Bankruptcy Act and substantially overhauling the entire bankruptcy system, the Supreme Court held that the unpaid portion of a nondischargeable prepetition tax claim plus postpetition interest on the claim survived a debtor's discharge in a liquidation bankruptcy case. *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). The Court indicated that the postpetition interest was not a claim against the bankruptcy estate, but continued to be enforceable against the debtor personally after the discharge. *Id.* at 361–63, 84 S.Ct. 906. The only provision of the Bankruptcy Act considered by the Court in that case was one declaring: " 'A discharge in bankruptcy shall release a bankrupt from all provable debts, except such as (1) are due as a tax levied by the United States.' " *Id.* at 360, 84 S.Ct. 906 (quoting part of § 17 of the Federal Bankruptcy Act, 11 U.S.C. § 35, repealed eff. Oct. 1, 1979). To support its ruling, the Court relied on three basic points:

1. "In most situations, interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt." *Id.*

2. "Nor is petitioner aided by the now-familiar principle that one main purpose of the Bankruptcy Act is to let the honest debtor begin his financial life anew.... [The section setting out the exceptions to discharge] is not a compassionate section for debtors. Rather, it demonstrates congressional judgment that certain problems—e.g., those of financing government—override the value of giving the debtor a wholly fresh start. [Footnote omitted.] Congress clearly intended that personal

1. Pub.L. No. 95–598, *reprinted in* 1978 U.S.C.C.A.N. (92 Stat.) 2549–2688 (codified as all of title 11, portions of title 28, and other miscellaneous provisions of the United States Code) (largely effective October 1, 1979).

liability for unpaid tax debts survive bankruptcy. The general humanitarian purpose of the Bankruptcy Act provides no reason to believe that Congress had a different intention with regard. to personal liability for the interest on such debts." *Id.* at 361, 84 S.Ct. 906.

3. "The basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate are the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience. [Footnote omitted.] These reasons are inapplicable to an action brought against the debtor personally. In the instant case, collection of post-petition interest cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high interest creditors at the expense of other creditors." *Id.* at 362–63, 84 S.Ct. 906.

Since the new Bankruptcy Code went into effect, a number of courts have applied the reasoning and result of *Bruning* not only to chapter 7 cases, but also to chapter 11 cases. *See, e.g., Johnson v. IRS (In re Johnson),* 146 F.3d 252 (5th Cir.1998) (chapter 7); *Hardee v. IRS (In re Hardee),* 137 F.3d 337 (5th Cir.1998) (chapter 7); *Burns v. United States (In re Burns),* 887 F.2d 1541 (11th Cir.1989) (chapter 7); *Hanna v. United States (In re Hanna),* 872 F.2d 829 (8th Cir.1989) (chapter 7); *Ward v. Board of Equalization (In re Artisan Woodworkers),* 204 F.3d 888 (9th Cir.2000) (chapters 11 and 12); *Fullmer v. United States (In re Fullmer),* 962 F.2d 1463, 1467–68 (10th Cir. 1992), *overruled in part on other grounds in Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (chapter 11). However, having considered a number of provisions in the new Code, particularly some in chapter 11 and chapter 13, this Court is convinced that the courts have been too hasty in applying *Bruning,* a liquidation case, to reorganization cases. Instead, the Code specifies how tax claims that would be nondischargeable in chapter 7 are to be paid in chapter 11 and 13 reorganizations, and it does not require gap interest to be paid.

When the debtors filed their chapter 11 petition, the IRS had a tax claim entitled to priority under § 507(a)(8). The IRS filed a proof of claim, so its claim would have been deemed allowed pursuant to § 502(a) unless a party in interest objected to it. If an objection had been made, postpetition unmatured interest would have been disallowed under § 502(b)(2). This provision incorporates the longstanding general rule that interest stops running on the filing of a bankruptcy petition. *See United Savings Ass'n v. Timbers of Inwood Forest,* 484 U.S. 365, 372–73, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *see also City of New York v. Saper,* 336 U.S. 328, 330, 69 S.Ct. 554, 93 L.Ed. 710 (1949) (indicating rule had been borrowed from English bankruptcy system and followed in United States for nearly 200 years). Section 506(b) establishes an exception to the general rule by providing that holders of oversecured claims are entitled to be paid postpetition interest to the extent the value of their collateral exceeds the amount of their claim. This raises a negative inference, consistent with the general bankruptcy rule, that postpetition interest on undersecured or unsecured claims is not allowable except to the extent that some other Code provision authorizes it. *See United Savings v. Timbers,* 484 U.S. at 372–73, 108 S.Ct. 626 (§ 506(b) denies postpetition interest to undersecured creditors and to oversecured creditors to extent such interest plus principal amount of claim will exceed value of collateral). Another provision with an important bearing on this discussion, § 523(a)(1), provides that taxes entitled to priority under § 507(a)(8) are nondischargeable.

Coupled with *Bruning,* these provisions have led courts to adopt the following rea-

soning. For most unsecured taxes, the IRS has a priority claim against the bankruptcy estate that does not include postpetition interest. However, while § 502(b)(2) generally prevents the collection of postpetition interest from the bankruptcy estate, it does not prevent the interest from accruing. As *Bruning* declared under the Bankruptcy Act, since the principal owed for a priority tax is made nondischargeable by § 523(a)(1) of the new Code, postpetition interest on the tax is also nondischargeable. Thus, although the interest is not recoverable from the bankruptcy estate, it accrues while the case is pending and survives as a claim against the debtor because it is nondischargeable. All the Circuit courts and most of the lower courts that have considered the question since the new Bankruptcy Code went into effect have simply relied on the reasoning of *Bruning* or other pre-Code cases to provide the rationale for continuing to except gap interest from discharge, with little analysis or discussion of the relevant provisions of the new Code. *See, e.g., Johnson,* 146 F.3d 252 (chapter 7); *Hardee,* 137 F.3d 337 (chapter 7); *Burns,* 887 F.2d 1541 (chapter 7); *Hanna,* 872 F.2d 829 (chapter 7); *Ward v. Board of Equalization,* 204 F.3d 888 (chapters 11 and 12); *Fullmer,* 962 F.2d 1463, 1467–68 (chapter 11). The courts do correctly point out that the legislative history does not declare that the *Bruning* result was rejected by the Code.

Of course, *Bruning* involved a liquidation bankruptcy case in which the nondischargeable tax claim was not paid in full by the bankruptcy estate. Its reasoning and result still seems correct under the provisions that apply to unpaid nondischargeable priority taxes in chapter 7 cases under the new Code. However, would Congress have had any reason to mention *Bruning* if it was establishing a rule for reorganization cases that required full payment of tax claims that would be nondischargeable in liquidation cases? This approach would have limited the reach of *Bruning,* but not raised any apparent need to suggest that it was being overruled in the new legislation.

■■■ This Court is convinced that Congress protected priority taxes in reorganization cases by requiring their full payment rather than by making them nondischargeable. This is most clear in chapter 13. Section 1322(a)(2) declares that, unless the claimholder agrees to different treatment, a chapter 13 plan must "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title." After completing all payments under the plan, the debtor is entitled to a discharge. *See* § 1328(a). As pointed out earlier, although oversecured claims are entitled to postpetition interest under § 506(b), the negative inference of that provision (and the longstanding general bankruptcy rule) is that interest is not allowed on other claims, including unsecured priority claims. In his chapter 13 bankruptcy treatise, Judge Keith Lundin states that priority claims are not entitled to postpetition interest during the chapter 13 repayment period, citing numerous cases so holding, with the limited and rare exception of a case where all the unsecured creditors would be paid in full in a chapter 7 liquidation. 2 *Chapter 13 Bankruptcy, Second Ed.,* § 7.35 at 7–87 to –88 (1994). Certain debts are excepted from a chapter 13 discharge, but not taxes covered by § 523(a)(1). *See* § 1328(a).[2] Since priori-

---

**2.** Under the new Bankruptcy Code as passed in 1978, the only debts covered by § 523(a) that were excepted from the chapter 13 discharge were those for alimony and support under § 523(a)(5). *See* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 1328(a)(2), 1978 U.S.C.C.A.N. (92 Stat.) 2549, 2650. Congress has since amended § 1328(a)(2) to add two other subsections of § 523(a) to the excepted debts, but has not added priority taxes covered by § 523(a)(1). *See* Student Loan Default Prevention Initiative Act of 1990, part of the Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, § 3007(b), 1990 U.S.C.C.A.N. (104 Stat.) 1388–25, 1388–28 (adding student loans cov-

ty taxes are not nondischargeable in chapter 13 cases and gap period interest is not required by § 1322(a)(2) to be paid, such interest is certainly discharged under § 1328(a). Unlike the situation in *Bruning*, then, at least to the extent of gap interest, it cannot properly be said that Congress has decided the problem of financing government outweighs the value of giving the debtor a fresh start in chapter 13. Nevertheless, Congress did not mention *Bruning* in the legislative history of chapter 13. In this Court's view, the likely explanation for this omission is that Congress had no reason to think that the *Bruning* liquidation decision should have any impact on the new chapter 13 reorganization provisions.

In language similar to that used in § 1322(a)(2), priority tax claims are afforded similar treatment in chapter 11 cases. Section 1129(a)(9)(C) requires that, unless the claimholder agrees otherwise, a plan must provide: "with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim." While this provision requires the plan to provide for prepetition interest, since that is included in the "allowed amount" of the claim, and post-confirmation interest, since the deferred payments must, on the effective date, have a present value equal to the allowed amount of the claim, it imposes no requirement that interest accruing between those two periods—gap interest—be paid. For corporations, partnerships, and other entity-debtors that either continue in business after consummation of their plans or do not liquidate substantially all their property under their plans, tax debts covered by § 523(a)(1) are not ex-

cepted from the discharge they receive on confirmation of a chapter 11 plan. *See* 11 U.S.C.A. § 1141(d). Thus, like individuals who receive a chapter 13 discharge, such entity-debtors clearly receive a discharge of gap-period interest. Still, as with chapter 13, Congress did not mention *Bruning* in the legislative history of chapter 11.

It is true that § 1141(d)(2) excepts from the chapter 11 discharge for individuals "any debt excepted from discharge under section 523 of this title," and that this can be construed to mean any unpaid portion of the IRS's priority claim is not discharged. For several reasons, the Court believes this construction is flawed. First, the Supreme Court has twice held that when Congress used the word "claim" in a Bankruptcy Code provision, the word includes all the rights the creditor holding the claim has against the debtor. *See Dewsnup v. Timm*, 502 U.S. 410, 415–18, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Nobelman v. American Savings Bank*, 508 U.S. 324, 330–32, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In the present context, the most relevant of those rights are to recover the principal amount of the claim, plus interest not only for the period before the debtor filed for bankruptcy and after the debtor's plan is confirmed, but also for the gap period between filing and confirmation. Significantly, however, when Congress specifically directed in § 1129(a)(9)(C) how tax claims must be paid under a chapter 11 plan, it said they must be paid the allowed amount of the claim plus prepetition and post-confirmation interest, but did not mention gap interest. *Dewsnup* and *Nobelman* indicate Congress' use of the word "claim" in this provision means all the claim rights are satisfied by making the required payments. Second, since § 1129(a)(9)(C) requires everything else about the claim to be paid, gap interest is the only part that

ered y § 523(a)(8)); Criminal Victims Protection Act of 1990, Pub.L. No. 101–581, §§ 2 & 3, 1990 U.S.C.C.A.N. (104 Stat.) 2865 (adding debts incurred through impaired driving cov-

ered by § 523(a)(9) and restitution included in a sentence on the debtor's conviction of a crime).

would be made nondischargeable by § 1141(d)(2). When a Code provision specifically mandates full payment of a claim plus post-confirmation interest, one should presume the claim is not also nondischargeable except to the extent the mandated payment is not made. Additional priority taxes disclosed by a post-confirmation audit could also be nondischargeable because the plan would not be paying them as required by § 1129(a)(9)(C). *See Grynberg v. United States (In re Grynberg)*, 986 F.2d 367, 370–71 (10th Cir.1993). Third, the rationale that Congress concluded the problem of financing government overrides the value of giving the debtor a wholly fresh start, at least to the extent of gap interest, is much weaker in the reorganization chapters since gap interest is undeniably dischargeable for individual chapter 13 debtors and entity chapter 11 debtors. Indeed, it is surprising to think that Congress deliberately chose to declare in § 1129(a)(9)(C), in terms that exclude gap interest, how tax claims are to be provided for by a plan of reorganization, only to require the gap interest to be paid anyway in some unspecified manner outside the plan by making such claims nondischargeable. Fourth, leaving the IRS's gap interest out of plan requirements but making it nondischargeable jeopardizes the debtor's performance under the confirmed plan because the IRS could attempt to collect the gap interest as soon as the debtor's plan goes into effect, a problem other Code provisions prevent the debtor from solving in the plan, absent cooperation from all other creditors. Thus, reading § 1141(d)(2) to require a debtor to pay gap interest post-confirmation, even though § 1129(a)(9)(C) does not, creates a potential obstacle to an individual chapter 11 debtor's performance under a plan that must be considered at least an administrative inconvenience and probably unfairness to other creditors, circumstances not involved in *Bruning*. In most cases, an individual chapter 11 debtor will have little or no property that is not being used to perform under the plan, and conse-

quently, no way to pay the gap interest without jeopardizing his or her plan performance. In sum, the Court is convinced that Congress intended for priority tax claims to be fully satisfied when paid as specified by § 1129(a)(9)(C), and not to leave some component of such claims to be paid in some other unspecified manner.

Unfortunately, this Court believes it is not free to apply this reasoning to cases coming before it. In *Fullmer v. United States (In re Fullmer)*, 962 F.2d 1463, 1467–68 (10th Cir.1992), *overruled in part on other grounds in Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000), the Tenth Circuit declared that *Bruning* applied to a person who had obtained confirmation of a chapter 11 plan, making postpetition interest on a prepetition tax claim survive the bankruptcy as a personal liability. Later, in ruling that gap interest on secured tax claims had been discharged by confirmed plans, the Circuit stated: "We conclude §§ 523(a)(1)(A) and 507(a)(7) [now (8)] clearly authorize the exception of tax debts and interest from dischargeability under 11 U.S.C. § 1141(d)(2) only when the governmental entity holds an unsecured claim to that debt." *United States v. Victor*, 121 F.3d 1383, 1390 (10th Cir.1997). An argument might be made that these decisions are not controlling because the *Fullmer* court was merely rejecting the debtor's argument that gap interest had been improperly collected from the bankruptcy estate, not that § 1129(a)(9)(C) precluded his personal liability for it, *see* 962 F.2d at 1467, and the *Victor* statement is mere dicta with respect to an unsecured priority tax claim. While a panel of the Tenth Circuit should be free to accept such an argument, however, this Court feels constrained not to do so.

Consequently, the Court must reluctantly conclude that gap interest on the IRS's priority claim was not discharged by confirmation of the debtor's plan.

The debtor also asserts that the IRS agreed to the treatment it received under her plan or should otherwise be equitably estopped from collecting gap interest. However, another disturbing aspect of the rule that gap interest on a priority tax claim survives confirmation of a chapter 11 plan is that, even if they do not eliminate the debtor's liability for gap interest, the Code provisions discussed above clearly do prevent the IRS from forcing the debtor to provide in the plan for the payment of gap interest. If the IRS includes postpetition interest in its claim, the interest must be disallowed under § 502(b)(2) if any interested party objects to it. Furthermore, under § 1129(a)(9)(C), the IRS can only insist that all of its claim except gap interest must be paid. Consequently, the Court is unwilling to rule that the IRS is estopped from trying to collect gap interest because it agreed to or acquiesced in the treatment it received under the debtor's plan. Finally, the Tenth Circuit has indicated that equitable estoppel is rarely, if ever, appropriate against the government. *DePaolo v. United States (In re DePaolo)*, 45 F.3d 373, 376–77 (10th Cir.1995). At least affirmative misconduct is required, *id.*, and the debtor does not allege that any occurred here.

For these reasons, the Court is forced to conclude that gap interest on the IRS's priority claim against the debtor was not discharged by the confirmation of her plan. The IRS is also not estopped from trying to collect the interest.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by FRBP 9021 and FRCP 58.