**In re George Stanley REVELLE,**
**Debtor.**

No. 99–61033.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Jan. 12, 2001.

**906**

Danny R. Nelson, Lathrop & Gage, Springfield, MO, for debtor.

Stephen D. Lanterman, R. Greg Wright, William F. Logan, Topeka, KS, for Creditors Ozark Bank and Kansas Banker's Surety Company.

Bruce E. Strauss, Merrick, Baker, Fox, Hufft & Strauss, Kansas City, MO, for Chapter 13 Trustee.

## *MEMORANDUM OPINION*

ARTHUR B. FEDERMAN, Chief Judge.

In this Chapter 13 case the issues before the Court arise from a life insurance policy, purchased by debtor George Stanley Revelle (Revelle), on the life of his wife Lisa, whom someone, thereafter, murdered. Due to certain actions of Revelle, the proceeds of the life insurance policy were not paid to Revelle, the original beneficiary, but to a Conservatorship for the benefit of his children. The Chapter 13 trustee has filed a motion to approve a monetary settlement with Revelle and other members of his family, pursuant to which a portion of those insurance proceeds would be paid to Revelle's creditors in full satisfaction of their claims. Kansas Banker's Surety Company (KBS) and Ozark Bank (Ozark) are creditors of Revelle as a result of his conviction for misappropriation of funds while employed at Ozark. KBS and Ozark objected to the proposed settlement, and that issue is before the Court. The second issue before the Court is Revelle's objection to the proofs of claim filed by KBS and Ozark. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (H), and (L) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## *ISSUES PRESENTED*

1. Ozark filed a general unsecured claim in the amount of $28,004.21. KBS filed a claim for restitution in the amount of $51,538.10. Revelle objected to the amount of Ozark's general unsecured claim on the basis that Ozark did not document the costs incurred as a result of the misappropriation, or mitigate the damages. Revelle objected to KBS's claim on the basis that the claim is a general unsecured claim, not a restitution claim, and that KBS failed to set-off a payment made in the amount of $12,604.18. Both claims arise from a Judgment In a Criminal Case (the Judgment) entered by the United States District Court for the Western District of Missouri (the District Court). The Judgment, entered in accordance with a plea agreement, required the payment of $12,604.18 in restitution, which Revelle paid, and also required the payment of $51,415.12 to KBS and $1,992.86 to Ozark,

contingent upon Revelle's receipt of insurance payments. In light of Ozark's failure to prove the amount of its claim, can this Court rely on the Judgment to establish the amount of its claim?

2. Upon motion by the trustee, and after notice and a hearing, the Court may approve a settlement, as long as the settlement is fair and equitable and in the best interest of the estate.[1] The filed unsecured claims in this case total approximately $126,193.47. Revelle disclaimed, in favor of his two children, all interest held by him in approximately one million dollars in life insurance proceeds on his wife Lisa. According to Revelle, his son has offered to contribute $75,000.00 in settlement of a potential fraudulent conveyance claim against the Conservators who hold the insurance proceeds for the benefit of the children. The two largest creditors objected to the amount of the settlement. Is the settlement fair and equitable and in the best interest of the estate?

## DECISION

1. The claims of KBS and Ozark are allowed in the amount previously found by the District Court, and set forth in the Judgment, less payments received pursuant to the Judgment.

2. In light of the objection of the creditors, and in light of the fact that the creditors make a substantial claim that Revelle had a cognizable interest in the insurance proceeds at the time of the disclaimer, I find that the settlement is not fair and equitable. I will, therefore, deny approval of the settlement.

## FACTUAL BACKGROUND

While the matters before me at this time are the objection to a claim and the approval of a settlement, an extensive recitation of the complex history of this case is necessary to a determination of those two matters. On July 1, 1994, Prudential Insurance Company of America (Prudential) issued a life insurance policy on the life of Lisa Revelle in the amount of $500,000, with double indemnity for accidental death. Revelle was the sole beneficiary on the policy. On September 28, 1994, someone murdered Lisa Revelle. Revelle was tried and convicted of first degree murder in February of 1996. He appealed that conviction, and on November 12, 1997, the Missouri Court of Appeals reversed Revelle's murder conviction and ordered a new trial.

Missouri law prevents a murderer from collecting life insurance proceeds from a policy on the life of the victim.[2] Prudential, therefore, refused to pay the proceeds of the insurance policy to Revelle. On October 2, 1997, after the conviction, and prior to the reversal of the conviction, Revelle, therefore, signed a release as to any claim he might have against Prudential, and consented to the payment of the proceeds to his two children:

> I hereby consent that payment of all proceeds on policy GO–14273 issued by the said THE PRUDENTIAL INSURANCE COMPANY OF AMERICA wherein Mary Lisa Revelle is designated as the insured, be made to: Carroll H. Revelle, Lucille Revelle and Elaine Revelle, as Conservators of the Estate of Stanley Carroll Revelle and Candice Marie Revelle, minors.[3]

On December 1, 1997, the Conservators of the estate of Stanley and Candice Revelle, the children of George and Lisa Revelle, filed a petition for a determination of heirship of the probate estate of Lisa Revelle. On June 15, 1998, the Christian County Circuit Court, Probate Division, entered an order, later amended on July 23, 1998, that declared Stanley and Candice Revelle to be the lawful heirs of Lisa Revelle. On November 14, 1998, Revelle,

---

1. Fed. R. Bankr.P. 9010.

2. *Home Ins. Company v. Butler,* 922 S.W.2d 66, 68 (Mo.Ct.App.1996).

3. Debtor's Ex. # 10.

Prudential, and the Conservators of the estate of Stanley and Candice Revelle entered into a settlement and release that resulted in Prudential paying to the Conservators of the estate of Stanley and Candice Revelle the sum of $1,100,000.00. Thereafter, in December of 1998 a jury acquitted Revelle in the second murder trial. He was released from prison at that time by the State of Missouri.

At the time of Lisa Revelle's death, Revelle was employed by Ozark. On October 3, 1994, five days after the murder, it was revealed that Revelle was under investigation by the Federal Bureau of Investigation (the FBI) in connection with his banking activities. On March 31, 1995, the United States Attorney's Office indicted Revelle for misappropriation of funds from Ozark, and on April 11, 1995, Ozark submitted a claim to KBS, pursuant to its Financial Institution Crime Bond, for the misappropriation of funds and other damages resulting from the investigation. In a letter dated April 17, 1995, the vice president of KBS informed Ozark that the Financial Institution Crime Bond did not cover the cost of special auditors, the legal expenses involved in the investigation, the loss of computers confiscated by the FBI, or the expenses incurred in providing the FBI with payroll records and computer tape backup information.[4] According to a Receipt and Agreement signed by the president of Ozark on April 26, 1995, Ozark made claim against KBS for "our loss in the amount of $50,415.03 which represents our total direct loss of $55,415.03 sustained because of embezzlement by George Revelle less the $5,000.00 deductible as covered by our Financial Institution Crime Bond No. 3135 MO."[5] On April 18, 1995, KBS paid Ozark the sum of $50,415.03.[6]

On May 31, 1995, Revelle entered into a plea agreement with the United States Attorney's Office. On September 7, 1995, the District Court accepted the plea agreement and entered its Judgment. The Judgment provided that Revelle be imprisoned for 27 months and upon release be supervised for three years.[7] The Judgment also provided that Revelle pay restitution in the amount of $12,604.18, and, in the event that Revelle "recovers any monies under insurance policies relating to his wife's death, a total of $51,538.10 shall be paid to Kansas Bankers Surety Company ... and any balance to Dan Hedgpeth, Chief Operations Officer, Ozark Bank ... for a total of $53,530.96."[8] Revelle paid the $12,604.18 to the United States Treasury, which in turn mailed a check to KBS. On September 14, 1995, KBS endorsed the check to Ozark to be "applied to your uninsured losses in the Revelle matter."[9] As stated, on November 14, 1998, Revelle entered into a settlement with Prudential and the Conservators of his children's estate in which he released all claim to the insurance proceeds. As a result, Prudential paid to Revelle's children's estate the sum of $1,100,000.00. When Revelle was later acquitted in the second murder case, the District Court, giving credit for time served, released him on probation, without his having made any payments of insurance proceeds to either KBS or Ozark.

On March 30, 1999, KBS and Ozark filed suit against Revelle in the Circuit Court of Christian County, Missouri, in effect claiming that they should have been paid from the life insurance proceeds for their losses resulting from Revelle's misappropriation of funds. On June 14, 1999, Revelle filed this Chapter 13 bankruptcy petition. KBS filed a proof of claim for restitution in the amount of $51,538.00, and Ozark filed a proof of claim in the amount of $28,004.21.

4. Respond. Ex. # 6.

5. Respond. Ex. # 7.

6. Respond. Ex. # 14.

7. Respond. Ex. # 10.

8. *Id.* at pg. 3.

9. Respond. Ex. # 11.

Revelle objected to both claims. He objected to the claim of KBS on two grounds. First, he claims the check from the United States Treasury made payable to KBS should have been used to offset the claim for $51,538.00. Second, he claims that the claim is a general unsecured claim, not one for restitution, as he never received the insurance proceeds. He objected to the claim of Ozark on two grounds as well. Ozark claims that the sum of $1,992.86 is for restitution and the remainder of the claim is a general unsecured claim. Revelle argues that there is no claim for restitution in that he never received the insurance proceeds. As to the remainder of the claim, Revelle objects to the amount of the claim. KBS and Ozark filed a timely response to Revelle's objection.

At the time Revelle filed this petition, he proposed a Chapter 13 plan that would pay $76.21 per month for 36 months. Both Ozark and KBS objected to confirmation of the plan on the grounds that the plan did not provide for payment in full of their claim for restitution in the amount of $53,530.96. This Court continued confirmation of the plan until such time as the Chapter 13 trustee could retain special counsel and determine whether to bring a fraudulent conveyance action against the Conservators of the estate of Stanley and Candice Revelle. The Chapter 13 trustee retained special counsel, and on November 20, 2000, counsel for the trustee filed his Motion to Approve Settlement With Debtor and Family Members (the Settlement).[10] The Settlement provides that Revelle, his children, the Conservators, and the guardians of his children's respective estates agree to pay a total of $75,000.00 to the Chapter 13 trustee, to be distributed to creditors in full satisfaction of their claims against Revelle. As a result, the Settlement provides for confirmation of the plan, consent by the trustee to an early termination of the bankruptcy case, after payment of the $75,000.00, and

the entry of a discharge of any and all other claims against Revelle. The timely-filed claims in this case total $126,193.47. KBS and Ozark objected to the Settlement. On December 18, 2000, this Court held a hearing on the objection to the claims of KBS and Ozark, the motion to approve the settlement, and confirmation of Revelle's proposed Chapter 13 plan. Creditors Kirkpatrick, Phillips, and Miller and Ozark objected to the plan as proposed. As announced at the hearing, I find that Ozark failed to prove, by either invoice or canceled check, many of the damages it claimed as a result of Revelle's misappropriation of funds. Specifically, I find no basis for a claimed expense of $28,500.00 for a special audit, and no itemization of legal fees in the amount of $2,283.50. As to the remainder of Ozark's claim, I indicated at the hearing that I would determine the amount, after closely examining the documentary evidence presented by Ozark and Revelle. I am now ready to rule on both objections to claims and on the motion to approve the Settlement. Counsel for Revelle, Ozark, KBS, and the Chapter 13 trustee have all submitted post-hearing briefs or suggestions.[11] In light of the arguments raised in those documents, I find it necessary, however, to begin with a statement of what is not before the Court at this time. No adversary proceeding has been filed in this Court by either the Chapter 13 trustee, KBS, or Ozark to avoid the payment of the insurance proceeds to the Conservators of the estate of Stanley and Candice Revelle as a fraudulent conveyance. Likewise, neither KBS nor Ozark has filed an adversary proceeding asking this Court to determine the dischargeability of their claims against Revelle. And, while Revelle's counsel has stated that one of the potential defendants is prepared to pay $75,000.00 in settlement of a fraudulent conveyance action which might be brought

10. Doc. # 49.

11. *See* Doc. ## 55 and 56 and letter dated January 5, 2001 from Bruce Strauss, attorney for the Chapter 13 trustee.

against them, those parties did not appear, are not represented in the bankruptcy case, and have not signed any document whereby they agree to make such a payment if this Court approves the Settlement. Procedurally, therefore, this Court cannot, and will not, decide whether Revelle's release of his claim to the insurance proceeds was a fraudulent conveyance, or whether the claim of KBS is one for restitution. I begin with the objections to the claims of KBS and Ozark.

## DISCUSSION

### A. The Objections to Claims

 Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a properly executed proof of claim is prima facie evidence of the validity and amount of the claim.[12] A party in interest may, however, file a written objection to a proof of claim.[13] If an objection to a claim is supported by sufficient evidence to rebut the presumption, the burden of proving the validity and amount of the claim shifts back to the claimant.[14] In other words, once sufficient evidence is offered to rebut the prima facie validity of a proof of claim, the respective parties have the same burden of proof they would have under non-bankruptcy law.[15] In this case, I find that Revelle did offer sufficient evidence to rebut the prima facie validity of Ozark's claim in his objection thereto, in his reliance on the District Court Judgment, and in the evidence presented at the hearing.

The burden of proving the amount of the claim, thus, then shifted to Ozark and KBS. In addition, since Ozark received from KBS a payment in the amount of $12,604.18 that Revelle now claims should have been paid to KBS, I find that the amount of KBS's claim is dependent upon the amount of Ozark's claim. I will, therefore, deal with the objection to these claims simultaneously.

It is undisputed that KBS paid Ozark the sum of $50,415.03 pursuant to Ozark's Financial Institution Crime Bond.[16] It is also undisputed that the Honorable Russell G. Clark, United States District Judge for the Western District of Missouri (Judge Clark), ordered Revelle to pay KBS the sum of $51,538.10 and to pay to Ozark the sum of $1,992.86. The Judgment provides as follows:

> In the event that defendant recovers any monies under insurance policies relating to his wife's death, a total of $51,538.10 shall be paid to Kansas Bankers Surety Company ... and any balance to Dan Hedgpeth, Chief Operations Officer, Ozark Bank ... for a total of $53,530.96.[17]

In addition, Judge Clark ordered Revelle to pay to KBS the sum of $12,604.18.[18] It is also undisputed that Judge Clark clearly designated the sum of $12,604.18 as restitution,[19] that Revelle did pay that amount to the United States Treasury, that KBS received a check in that amount from the United States Treasury, and that KBS en-

12. Fed. R. Bankr.P. 3001(f); *Brown v. Internal Revenue Service (In re Brown)*, 82 F.3d 801, 804 (8th Cir.1996).

13. Fed. R. Bankr.P. 3007.

14. *Brown*, 82 F.3d at 804; *In re Interco Inc.*, 211 B.R. 667, 677 (Bankr.E.D.Mo.1997) (holding that a properly filed proof of claim is prima facie evidence of the amount and validity of the claim, and a debtor who objects must offer evidence in rebuttal. Sufficient evidence in rebuttal shifts the burden to the claimant to establish a right to payment); *In re Hydorn*, 94 B.R. 608, 612 (Bankr.W.D.Mo. 1988) (stating that a proof of claim executed and filed in accordance with Rule 3001(f) is

prima facie evidence of the validity and amount of the claim, and the debtor must object to the value of the claim in order to defeat the prima facie connotation).

15. *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 1958, 147 L.Ed.2d 13 (2000).

16. Respond. Ex. # 7.

17. Respond. Ex. # 10 at pg. 3.

18. *Id.*

19. *Id.* at pg. 4.

dorsed that check over to Ozark to apply to its uninsured loss.[20] Revelle argues that KBS was under no obligation to turn those funds over to Ozark, and that it should have, instead, reduced its claim by that payment. I disagree. The Judgment can only be read to assess maximum damages against Revelle in the amount of $66,135.14. The payment of the $12,604.18 is unrelated to the Order to pay the sum of $53,530.96 in the event Revelle ever received the insurance proceeds. Therefore, there is no basis for Revelle's argument that KBS's claim should be setoff by the amount of that payment. At the time Judge Clark entered judgment against Revelle, he had before him evidence of the loss sustained by Ozark and KBS. I find, therefore, that Judge Clark made a determination that Ozark sustained uninsured losses in the amount of $14,597.04. And, Ozark failed to sufficiently prove the amount of its claim in this Court by submitting either invoices or canceled checks, with one exception. Ozark did submit invoices totaling $1,123.07 for changing locks after it discovered the misappropriation.[21] But that was a covered loss for which KBS has already reimbursed Ozark.[22] I will rely, therefore, upon Judge Clark's assessment of the value of the claim, and I find that Ozark has an allowed claim against Revelle in the amount of $1,992.86, the difference between the uninsured loss of $14,597.04 and the $12,604.18 paid to it. I

make no determination as to whether this is a general unsecured claim or a restitution claim.

As to KBS, I find that Judge Clark determined the value of KBS's claim to be $51,538.10.[23] Revelle offered no evidence to sufficiently contradict Judge Clark's determination. I, therefore, find that KBS has an allowed claim in the amount of $51,538.10. I, likewise, make no determination as to whether this is a general unsecured claim or a restitution claim.

### B. *The Settlement*

▮▮▮▮ Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizes the Court to approve a settlement:

(a) On motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement.[24]

Whether to approve or disapprove of a settlement is within the sound discretion of the Bankruptcy Judge.[25] In order to properly exercise that discretion, the Court must determine if the settlement is fair and equitable and in the best interests of the estate.[26] To make that determination, the Court must consider four factors: (1) the probability of success in the litigation; (2) the ability to collect; (3) the complexity of the litigation; and (4) the paramount interest of the creditors and a proper deference to their views.[27] Or "whether the debtor's creditors affirma-

---

20. Respond. Ex. # 11.

21. *See* Respond. Ex. # 5.

22. Respond. Ex. # 7.

23. KBS paid Ozark the sum of $50,415.03 for its insured loss. Respond. Ex. # 6. No one offered an explanation for the discrepancy between the payment of $50,415.03 and the assessment of $51,538.10. I can only assume the difference of $1,123.07 relates to some costs incurred by KBS as a result of the misappropriation.

24. Fed. R. Bankr.P. 9019(a).

25. *In re Stein*, 236 B.R. 34, 37 (D.Or.1999); *In re Ashford Hotels, Ltd.*, 235 B.R. 734, 740 (S.D.N.Y.1999).

26. *Resolution Trust Corp. v. Best Products Co., Inc. (In re Best Products Co., Inc.)*, 177 B.R. 791, 794 n. 4 (S.D.N.Y.1995), aff'd, 68 F.3d 26 (2nd Cir.1995) (In this case, while the Resolution Trust Corporation objected to confirmation, the majority of the creditors voted in favor of confirmation of a Chapter 11 Plan of Reorganization that included the settlement at issue).

27. *Drexel Burnham Lambert v. Flight Transportation Corporation Securities Litigation (In re Flight Transportation Corporation Securities Litigation)*, 730 F.2d 1128, 1136 (8th Cir. 1984); *Stein*, 236 B.R. at 37.

tively support, or do not object to, the settlement." [28] Of these four factors, the one that most concerns this Court is the fourth one, due to the objections filed by Ozark and KBS. In *In re Flight Transport Corporation Securities Litigation,* the Eighth Circuit held that it was not an abuse of discretion for the bankruptcy court to approve a settlement that split a constructive trust claim in half, where the great majority of securities' purchasers who would benefit from the constructive trust litigation approved of the settlement.[29] That is not true here. At this time the allowed claims in this case total $100,182.12.[30] Of that amount KBS and Ozark hold allowed claims in the amount of $53,530.96, or over 50 percent of the total claims filed. Under the proposed settlement the Chapter 13 trustee will receive 7.8 percent of the $75,000 payment, or $5,850.00. In addition, the estate will pay administrative expenses, including payment of attorney's fees. Without allowing for administrative expenses, the creditors will receive no more than 69 percent of their allowed claims. KBS and Ozark argue that if they or the Chapter 13 trustee were successful in bringing a fraudulent conveyance action against the Conservators of the estate of Stanley and Candice Revelle, they would be paid in full. And, because the funds in the estate are in excess of one million dollars, they would be able to collect on any judgment they receive. In deciding whether to approve the Settlement, the Court must "canvas the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'"[31] I find that there is some possibility that Revelle still held some interest in the insurance proceeds at the time he signed the release on October 2, 1997. At that time his murder conviction was on appeal. Revelle argues that for collateral estoppel purposes, under Missouri law the pendency of an appeal does not eradicate the finality of a judgment of conviction for murder, when the issue is to whom an insurance company should pay insurance proceeds. Revelle, therefore, argues that he had no interest in the policy at the time he signed the release, so the release could not have been a fraudulent conveyance. In support of this argument, he cites cases that essentially stand for the following proposition. An insurance company is not obligated to litigate the issue of who is the rightful beneficiary to insurance proceeds with a person convicted of murdering the insured, even if that conviction is on appeal.[32] Despite this proposition, in *Webb v. Voirol,*[33] upon which the Missouri Court relies in *Home Insurance Company v. Butler,* the court granted preclusive effect to a judgment of conviction only after all *direct* appeals had been exhausted.[34] In this case, Revelle was ultimately acquitted in the second murder trial when the Court of Appeals overturned his conviction on direct appeal. He argues, in effect, that he lost his right to claim the insurance proceeds when he was convicted by the trial court, regardless of the outcome of the appeal. KBS and Ozark disagree. While I do not need to decide that precise issue until after a suit is filed, it appears that KBS and Ozark have a substantial basis for arguing that, while Revelle may not

**28.** *Best Products* at 794.

**29.** *Flight Transport,* 730 F.2d at 1138.

**30.** Timely filed claims total $126,193.47, including Ozark's claim for $28,004.21. This Court sustained Revelle's objection to Ozark's claim save for the sum of $1,992.86.

**31.** **10 Collier on Bankruptcy** ¶ 9019.02 at 9019–4 (Lawrence P. King, ed., 15th ed. rev. 2000) (quoting, *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 493, 497 (Bankr. S.D.N.Y.1991), *quoting In re W.T. Grant Co.,* 699 F.2d 599, 608 (2nd Cir.) *cert. denied, Cosoff v. Rodman,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983)).

**32.** *Home Ins. Company v. Butler,* 922 S.W.2d 66, 68 (Mo.Ct.App.1996).

**33.** 773 F.2d 208 (8th Cir.1985).

**34.** *Id.* at 210 (emphasis added).

have been able to bring an action for payment of the insurance proceeds while the conviction was on appeal, he would have only lost all rights under the policy if his conviction had been affirmed. I find, therefore, that KBS and Ozark have a substantial probability of prevailing in fraudulent transfer litigation, and of recovering 100 percent of their claims if the matter is not settled.

As to the complexity of the litigation, the third factor, the Court would be dealing with only one transfer to the Conservators of the estate of Stanley and Candice Revelle. I find, therefore, that a cause of action for a fraudulent conveyance in this case, under either state law or the Bankruptcy Code, is not complex.

The fourth factor requires me to consider the views of the creditors. And, as noted, KBS and Ozark are opposed to the Settlement. The Settlement requires that KBS and Ozark give up any substantive rights they might have against Revelle. They both make a colorable claim that their debt is nondischargeable, but the Settlement requires them to forego any such claim. They also make a substantial claim that the transfer is avoidable, allowing them to be paid in full, but the Settlement requires them to accept at most 69 percent of their allowed claims. Under these circumstances, and in light of the objections of KBS and Ozark, who hold over 50 percent of the allowed claims, I will not approve the Settlement as proposed.

Thus, I have found that either the Chapter 13 trustee, or the creditors acting in state court if this Court granted a motion to lift the automatic stay, have a substantial probability of recovering 100 percent of their allowed claims. Short of litigating the fraudulent conveyance issue, I see no basis for confirming a plan that pays less than 100 percent over the objections of creditors. I will, therefore, order that, within 10 days, Revelle exercise one of three options:

(1) Propose a plan that pays 100 percent of allowed claims; or

(2) Convert the case to Chapter 7; or

(3) Dismiss the case.

The Chapter 13 trustee's counsel notes that if either the trustee or the creditors succeed in avoiding the transfer of the insurance proceeds, the balance of the funds, after payment of all claims, will revert to Revelle, and he will be under no obligation to preserve the funds for the benefit of his children. That concern for children who lost their mother under tragic circumstances is laudable, but the Court's concern must be with the fair treatment of Revelle's creditors. Here, creditors representing a majority of the claims are prepared to walk away from as much as a 69 percent payout, because they believe that in contested litigation they will ultimately prevail and be paid 100 percent. Given that their position appears to have a substantial basis, they should be allowed their day in court. Accordingly, the motion to approve the Settlement will be denied.

An Order in accordance with this Memorandum Opinion will be entered this date.