[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Merrill Lynch Interfunding, Inc., is seeking, pursuant to C.G.S. 52-356b(a), an order from the court in aid of execution directing the defendants, Patrick Argenti and Jean Argenti, to turn-over two specific items of personal property, a heart-shaped diamond ring and a 1996 Saab automobile. The plaintiff had obtained against the defendants in the United States District Court for the southern district of New York, after a jury trial, a judgment in an amount in excess of $10,000,000. Pursuant to C.G.S. § 52-605, the plaintiff filed a CT Page 9697 certified copy of that judgment in this court as a foreign judgment and now seeks the turn-over order referred to. The defendants resisted the order and a full evidentiary hearing was held on two separate days.
Two major issues arise from the evidence and arguments presented: (1)
whether, under the facts of this case, the large heart-shaped diamond ring purchased at Tiffany's for $50,000 given by the defendant husband to the defendant wife twelve years after their marriage is an engagement ring so as to qualify as exempt property pursuant to C.G.S. §52-352b(k) or as necessary apparel under § 52-352b(a); and (2)
whether Justin Argenti, the son of the defendants, is the beneficial owner of the 1996 Saab automobile (registered in the name of his mother) because of a resulting trust, rendering the car unavailable for execution by the plaintiff.[1]
 I. THE RING
The court finds the following relevant facts. The defendants were married on December 11, 1976. There had been no engagement ring given or received because Mr. Argenti could not afford to buy one at the time. They did exchange wedding bands.
Mr. Argenti founded an apparel/dress business in 1980, known as Argenti, Inc. (the Company), which became extremely successful, doing some $180,000,000 in business between 1980 and 1990. In November, 1988, Argenti, Inc. became financially involved with the plaintiff, which paid $11,500,000 for a forty percent interest in the company. In 1990, the company's fortunes dimmed and the defendants executed, over time, a series of notes to the plaintiff to provide further financing. Eventually, these notes became the basis of the judgment upon which the plaintiff now seeks to execute.
Meanwhile, while the business still flourished, the plaintiff and the company held a Christmas party for their employees on December 18, 1988, held at the Metropolitan Museum of Art in New York City. On that day, one week after their twelfth wedding anniversary, Mr. Argenti presented Mrs. Argenti with the diamond ring in question. He had purchased it at Tiffany's at a cost of at least $50,000 plus tax. Neither of the two defendants knows precisely how large the stone is, but Mr. Argenti estimated it to be three or four carats. The court viewed the piece and finds that it must be described as a very large, heart-shaped solitaire diamond ring.
 A.
The defendants claim that the ring is not subject to execution because CT Page 9698 it is an engagement ring exempt under C.G.S. § 52-352b(k).[2] Mr. Argenti claims that he gave his wife the ring as the engagement ring she never had. He never discussed with his wife the sentimental value of the ring, and doesn't know how often she wears it. In his deposition Mr. Argenti testified, alternately, that he does not know whether she wears the ring, that she doesn't wear the ring, that he doesn't know where she keeps it, and that they are not "jewelry people." Mrs. Argenti states that it is an engagement ring, that she wears it every day on the third finger of her left hand, including when she is doing all of her household chores. At her deposition, she testified that it was an anniversary gift given in place of an engagement ring, and that she would be devastated if it were taken from her. In an errata sheet presented after the deposition, Mrs. Argenti changed the word "anniversary" to "engagement," with reference to the ring.
Connecticut General Statutes § 52-352b(k) does not define the term "engagement ring." A statute must be interpreted in accordance with its plain meaning. Hyllen-Davey v. Planning Zoning Commission of the Town ofGlastonbury, 57 Conn. App. 589, 594, 749 A.2d 682 (2000). The words must be given their plain and ordinary meaning and their natural and usual sense unless the context indicates that a different meaning was intended. In re: Darlene C., 247 Conn. 1, 10, 717 A.2d 1242 (1998).
No Connecticut cases have been cited or found determining whether a ring given after a marriage can be considered an engagement ring. Cases in other jurisdictions have found that it cannot; see In re: Tiberia,277 B.R. 26 (Bankr.W.D.N.Y., (1998); and that engagement rings are considered to be conditional gifts made in contemplation of marriage. Inre: Wilson, 210 B.R. 544 (Bankr.N.D. Ohio (1997). Dictionaries have various definitions of the term. See Cambridge International Dictionaryof English ("engagement ring is a ring, usually with precious stones in it, which a man might give to a woman as a formal sign that they have decided to get married"); Webster's Encyclopedic Unabridged Dictionary of the English Language, 473 (1989) ("a ring, often a diamond solitaire, given by a man to his fiancee at the time of their engagement as a token of troth"); Webster's Third International Dictionary 751 (1966) ("a ring given in token of betrothal"). The defendants point to the last of these, arguing that the lack of any temporal limitation as to when a ring must be given means that an engagement ring may be given any time, before or after marriage, so long as it is given in token of the betrothal.
The defendants note that in Connecticut, "exemption laws must be liberally construed in favor of a debtor and the debtor's family, so that their purposes may be properly effectuated." Caraglior v. World Savingsand Loan (In re: Caraglior, 251 B.R. 778, 782-83 (Bankr.D.Conn. 2000);Hitchcock v. Holmes, 43 Conn. 528, (1876). However, the words of a CT Page 9699 statute must be interpreted according to their plain meaning.Hyllen-Davey v. Planning Zoning Commission of the Town of Glastonbury,
supra, 57 Conn. at 594. "It was the object of the statute to protect [the exempt property]; and the words of this, as of other laws, ought to be expounded according to their popular acceptation, in order to attain the legislative intent." Flaxman v. Capitol City Press, Inc., 121 Conn. 423,426, 185 A.2d 417 (1936) (quoting Patten v. Smith, 4 Conn. 450, 454
(1823). The court finds the legislative intent was to protect that ring which may be given by a man to his fiancee, in contemplation of a future marriage, and as a token of the engagement. This view is bolstered by Connecticut cases which, although not interpreting the state's exemption from execution laws, signal the courts' views as to the nature of engagement rings.
 "Generally, it is held that where an engagement is broken owing to the fault of the donor he may not recover the ring. The theory is that the ring is given as an implied condition that the marriage will take place. Clark v. Pendleton, 20 Conn. 495, 505 (cited in White v. Finch, 3 Conn. Cir. Ct. 138 1964). Such contracts are seldom expressed in very definite language and they are not improperly or infrequently inferred as much from the conduct of the parties toward each other as from any direct evidence of expressed stipulations. Waters v. Bristol, 26 Conn. 398, 905." Syranakis v. Hopkins, Superior Court, judicial district of New London at Norwich, Docket No. 117412 (February 6, 2001) (Hurley, J.T.R.)
The clear implication in this theory is that engagement rings are generally given before marriage, and upon condition thereof. This court does not hold that a ring given on a date subsequent to the wedding day of a couple cannot, under appropriate circumstances, be an engagement ring. It does hold that upon the facts of this case, the ring given by Mr. Argenti to his wife twelve years after the marriage was not an engagement ring, was not intended as such, and was not given as a token of the betrothal. The ring was given within a week of their twelfth wedding anniversary, in the Christmas season. There is evidence that Mr. Argenti rarely saw his wife wear the ring, and that she does not wear it. Although Mrs. Argenti testified at her deposition that it was an anniversary gift, she subsequently changed that testimony and claims now that it was given as an engagement ring and that she wears it always. The court does not place credence on this evidence and finds it insufficient.
In conclusion, the court finds that the diamond ring was not an CT Page 9700 engagement ring, but was a gift given, as characterized in testimony by Mrs. Argenti, "in place of an engagement ring." As such, the ring does not qualify as exempt property under C.G.S. § 52-352b(k).
 B.
The defendants next claim that the ring in question is exempt from execution as "necessary apparel" pursuant to C.G.S. § 52-352b(a). This section provides that "[t]he following property of any natural person shall be exempt: (a) necessary apparel, bedding, foodstuff, households furniture and appliances." The parties have not cited a Connecticut case which determines the issue whether jewelry may be exempt under this section of the exemption laws. However, the word "necessary" is defined in the statute: "`necessary' means reasonably required to meet the needs of the exemptioner and his or her dependents including any special needs by reason of health or physical infirmity." C.G.S. §52-352a(b).
The defendants point the court to several cases, predominantly federal bankruptcy cases, which they claim support their position that Mrs. Argenti's ring is exempt as necessary apparel. But these cases are distinguishable either because they involve wedding or engagement rings which were found exempt as "wearing apparel," or jewelry which has a statutory limit on value, or the language of the statutes omit any reference to "necessary" apparel, as is found in the Connecticut statute.
As the court expressed before, it does not credit the defendants' evidence that the jewelry in question is an engagement ring, or that it was worn daily by the owner so as to suggest that it is an item of necessary apparel. The testimony of the defendants in respect thereof was at best conflicting as to how frequently, if ever, the ring was worn, giving pause to the theory that the ring has somehow become necessary apparel because of Mrs. Argenti's emotional attachment to it.
The court does not find that a piece of jewelry might not be considered, in another case, necessary apparel. But there is no precedent in Connecticut or elsewhere to suggest, and the court cannot conclude, that the ring in this case, a three-four carat, heart-shaped diamond, purchased in 1988 at Tiffany's for in excess of $50,000 is exempt property of these defendants under the "necessary apparel" exemption of C.G.S. § 52-352b(a). Therefore, the plaintiff's request for a turn-over order is granted as to the subject ring.
 II. THE SAAB
CT Page 9701
In the matter of the 1996 Saab, the issue presented to the court for determination is whether, although legal title to the car is in Mrs. Argenti, the car is unavailable to the plaintiff for execution because the beneficial owner is her son, Justin Argenti. The defendants claim that a resulting trust was created in favor of Justin since the car was paid for by his funds.[3]
The Trust involved was created in 1988 and it was known as The Justin Argenti Trust, with Jean Argenti as trustee. The Trust held an investment account at Chase Investment Services Corp. ("Chase") and a bank account at Bank of New York, a successor in interest to Putnam Trust Company of Greenwich.[4] On August 19, 1998, Mrs. Argenti, as trustee, sold shares of Disney stock held in Justin's Chase account for approximately $49,500.[5] The proceeds of the sale remained in money market accounts until August 28, 1998 when each child's trust was debited for a check in the amount of $49,500. In actuality, Chase drew one check to the Argentis in the approximate amount of $150,000 which they deposited in a personal account of their own. Shortly thereafter, on September 8, 1998, the Argentis drew a check for $49,500 and deposited it in the trust account of Justin at the Bank of New York. Similar deposits were made for the other children as well. Thereafter, on October 13, 1998, a cashier's check drawn on Justin's account at Bank of New York in the amount of $18,000 was paid to Saab of Westport for the purchase of the subject car.
In Connecticut, a resulting trust arises ". . . by operation of law at the time of a conveyance when the purchase money for property is paid by one party and the legal title is taken in the name of another." Farrahv. Farrah, 187 Conn. 495, 500 446 A.2d 1075 (1982). The burden of proving a resulting trust is on the party seeking to establish it. Id., 501, and the proof must be by clear and convincing evidence. See Lord v.Stavrakis, 6 Conn. App. 161, 503 A.2d 629.
The court finds that the defendants have proven the existence of a resulting trust by clear and convincing evidence. The trust for Justin Argenti was created in 1988. The trust owned Disney stock held in an account at Chase Investment Security Corp.[6] This stock was sold, and the money rested in a money market account at Chase for nine days, was distributed to the defendants, who eleven days later deposited Justin's share in the amount of $49,500, in a bank account for his benefit in the Bank of New York.[7] The cashier's check for $18,000 used to pay for the car was drawn against this account. By clear and convincing evidence, then, the court finds that the purchase price of the car was paid by Justin. Bare legal title was in his mother solely for insurance purposes.[8] Therefore, the purchase price having being paid by one party, and legal title taken in the name of another, the law infers the CT Page 9702 intention and there is a resulting trust; Farrah v. Farrah, supra,187 Conn. 501, in this case, in favor of Justin Argenti.
The plaintiff claims the Argentis used money from the children's trust accounts for their own purposes and therefore the money was in fact theirs. The defendants concede that when they felt the financial strain upon them, they used money from these accounts for their survival and that of their children. They also gave security for much of the borrowing from the trust, which was allowed by the trust documents. But whether their actions in using trust funds was proper or not, the trust in question was Justin's, and he was the beneficial owner. The funds used for payments for the car were his. For the foregoing reasons, the automobile is not available to the plaintiff for execution on the judgment against the defendants.
In summary, the turn-over order is granted as to the heart-shaped diamond ring, and is denied as to the 1996 Saab automobile.
So Ordered.
D'ANDREA, J.T.R.