In re Kay P. CANTRELL, Debtor.

No. 01–30610 (LMW).

United States Bankruptcy Court,
D. Connecticut.

Dec. 13, 2001.

Charlene M. Wright, Trumbull, CT, for Debtor.

Barbara H. Katz, New Haven, CT, for Chapter 7 Trustee.

### MEMORANDUM OF DECISION SUSTAINING TRUSTEE'S AMENDED OBJECTION TO SCHEDULE C [1]

LORRAINE M. WEIL, Bankruptcy Judge.

The matter before the court is the chapter 7 trustee's (the "Trustee") Amended Objection to Schedule C (Doc. I.D. No. 8, the "Amended Objection") pursuant to which the Trustee objects to the above-captioned debtor's (the "Debtor") purported exemption under Bankruptcy Code § 522(b) and the Connecticut statutory homestead exemption of a beneficial interest under an alleged resulting trust in respect of certain real property (the "Property") located in Madison, Connecticut.[2]

### I. Procedural History

The Debtor commenced this chapter 7 case by voluntary petition filed on February 12, 2001 (the "Petition Date"). The Debtor is married but her husband neither joined in the chapter 7 petition nor filed

---

1. This memorandum constitutes the findings of fact and conclusions of law mandated by Rule 52 of the Federal Rules of Civil Procedure (made applicable to this adversary proceeding by Rule 9014 of the Federal Rules of Bankruptcy Procedure).

2. This is a "core proceeding" within the purview of 28 U.S.C. § 157(b).

his own. The Debtor also filed her original bankruptcy schedules and Statement of Financial Affairs (included in Doc. I.D. No. 1, collectively, the "Schedules") on the Petition Date. The Debtor did not list an interest in the Property on the Schedules. The Debtor's Schedule J—Current Expenditures of Individual Debtor(s) shows no cash outflows for mortgage payments or real property taxes whatsoever, but does show a monthly expense of $200 for "[h]ome maintenance (repair and upkeep)". At the meeting of creditors held on March 15, 2001 pursuant to Bankruptcy Code § 341 (the "Meeting"), the Debtor disclosed certain facts in respect of the Property and the funding sources for its acquisition in response to the Trustee's questions. After the conclusion of the Meeting, the Debtor served on the Trustee an amended Schedule A, listing as an asset a "constructive trust interest" in the Property valued by the Debtor at $78,000.00. The Debtor also served on the Trustee an amended Schedule C, claiming an exemption of $76,000 in respect of that "trust" pursuant to Sections 52–352b(t) and 52–352b(r) of the Connecticut General Statutes (the Connecticut homestead exemption).[3] The Debtor received her chapter 7 discharge on May 29, 2001.

The Trustee timely filed[4] an objection (Doc. I.D. No. 4) to the claimed exemption on the grounds that the Debtor cannot claim an exemption in a constructive trust as her homestead under Connecticut law. The Trustee then filed the Amended Objection (Doc. I.D. No. 8) which added the further objection that, since the alleged "constructive trust" arose. from a voluntary transfer from the Debtor to her husband (which transfer is described below), the Debtor is prohibited by Bankruptcy Code § 522(g)[5] from claiming an exemption in respect of the Property.

A hearing (the "Hearing") on the Amended Objection was held on August 2, 2001. At the Hearing, it was agreed by the parties and the court that the Debtor's interest in the Property (to the extent, if any, that such interest exists at all) would be properly characterized under Connecticut law as a "resulting trust" rather than as a "constructive trust".[6] Both parties

---

**3.** It appears from the docket in this case that neither of those "amendments" were filed with the court. However, the parties have proceeded as if the "amendments" were so filed, and (for the purposes of this memorandum) so will the court.

**4.** *See* note 3, *supra.*

**5.** Section 522(g) limits a debtor's right to exempt certain property recovered by the chapter 7 trustee pursuant to the trustee's avoidance powers (including recoveries of fraudulent transfers) as follows:

Notwithstanding sections 550 and 551 of ... [title 11], the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1) (A) such transfer was not a voluntary transfer of such property by the debtor; and

 (B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f) [(1)(B)] of this section.

11 U.S.C.A. § 522(g) (West 2001). Under Connecticut law, a fraudulent transfer is valid and enforceable between the parties thereto. *See Doty v. Wheeler,* 120 Conn. 672, 182 A. 468 (1936).

**6.** Imposition of a constructive trust typically requires some element of fraud or other inequitable conduct on the part of the putative constructive trustee. *See, e.g., Jaser v. Fischer,* 65 Conn.App. 349, 783 A.2d 28 (2001). That is not the Debtor's theory here. Presumably the Debtor's theory is that title to the Property is held in some form of joint ownership between her husband for his own use

placed documentary exhibits (the "Exhibits") into the record at the Hearing. The Debtor was the sole witness at the Hearing. At the conclusion of the Hearing, the court took the matter under advisement and ordered a briefing schedule. The matter now has been briefed by the parties and is ripe for decision.

For the reasons set forth in part III of this memorandum, the court hereby sustains the Amended Objection. However, because the court's analysis differs somewhat from the Trustee's analysis, it is unnecessary to discuss Bankruptcy Code § 522(g). Based upon the record made at the Hearing [7], the briefs of the parties and the entire record in this chapter 7 case, the court finds the facts set forth immediately below.

## II. *Facts*

On July 22, 1999, the Debtor's husband purchased the Property purportedly in his own name. The Debtor funded a down payment (the "Down Payment") in respect of the purchase in the approximate amount of $78,000.00 and the remainder of the contract purchase price appears to have been paid primarily from the proceeds of a new mortgage loan from a bank or other mortgage lender. The Debtor's husband holds sole record title to the Property (subject to the mortgage) and is the sole obligor with respect to the related mortgage loan.

The source of the Down Payment was the Debtor's inheritance of the proceeds of the sale of her deceased parents' home.[8] Before that home had been sold, the Debt-

or had lived there with her husband and her children. (*See* Schedules (Statement of Financial Affairs, item no. 15).) Prior to the purchase of the Property, the Debtor and her husband consulted a real estate agent for the purpose of buying a family home. Both the Debtor and her husband signed the documents necessary to retain the real estate agent. (*See* Debtor's Exhibit 2.) Thereafter, the Debtor and her husband sought the services of a mortgage broker. The Debtor remitted a check to the mortgage broker for the loan application. That check (a copy of which is Debtor's Exhibit 1) was drawn by the Debtor upon a joint account standing in the names of the Debtor and her husband. At the Hearing, the Debtor testified that the mortgage broker advised the Debtor and her husband that the broker would be able to get them a substantially better interest rate if the purchase were to be solely in the husband's name. The Debtor further testified that she and her husband consulted another mortgage broker who gave them substantially the same advice.[9] Based upon the advice of the two mortgage brokers, the Debtor testified, she and her husband decided to proceed with the purchase solely in the husband's name. The Debtor further testified at the Hearing that she never intended her funding of the Down Payment to be a gift to her husband. Rather, she testified, it was her intention that both she and her husband were buying a house together for the purpose of obtaining a family home for her, her husband and her children. The Debtor also testified that record title to the Property was not changed after closing to

---

and benefit and her husband as resulting trustee for her.

**7.** That record is comprised of the transcript the original of which is in the record of this case as Doc. I.D. No. 12 (the "Transcript"), together with the Exhibits.

**8.** The Debtor may have shared in those proceeds with one or more other heirs.

**9.** The Debtor testified that the stated reason for the brokers' advice was that the Debtor's own credit rating was poor. (*See* Transcript at 17.)

give the Debtor a record interest in the Property because she was told at closing (by some unidentified person) that such a transfer was not permitted under the mortgage documents.[10]

At the time of the Debtor's funding of the Down Payment, the Debtor owed approximately $40,000 to her creditors. Her husband was not liable on those debts. The Debtor either was unemployed at the time she funded the Down Payment or intended to give up her outside job shortly after she and her family moved into the Property. As of the Petition Date, the Debtor had been employed as an x-ray technician for about eleven months. The Schedules show approximately $100,000 in general unsecured claims, all or substantially all of which appear to be credit card debt. The Debtor lists no "codebtors" in the Schedules.

### III. *Discussion*

#### A. Applicable Law

 Bankruptcy Code § 522(b) provides in relevant part: "Notwithstanding section 541 of ... [title 11], an individual debtor may exempt from property of the estate the property listed in ... paragraph (2) of this subsection." 11 U.S.C.A. § 522(b) (West 2001). Thus, only "property of the estate" may be exempted pursuant to Section 522(b). With certain exceptions not relevant here,[11] "property of the estate" is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case", 11 U.S.C.A. § 541(a)(1) (West 2001). Thus (again subject to certain here-irrelevant exceptions), in order to exempt an interest

in respect of property, the debtor must hold a legal or equitable interest in such property as of the commencement of the case. *See Gibson Group, Ltd. of Pinellas County, Inc. v. Cooper (In re Cooper)*, 197 B.R. 698, 701 (M.D.Fla.1996) ("The Bankruptcy Code is clear that the time to examine whether the Debtor had an interest in the property [for Section 522 purposes] is at the date of the filing of the petition."). For Section 522 purposes, the nature and extent of the debtor's interest (if any) in property must be determined under state (here Connecticut) law. *See In re Koesling*, 210 B.R. 487 (Bankr.N.D.Fla.1997); *In re Hackett*, 23 B.R. 710 (Bankr.E.D.Pa. 1982). Accordingly, if the Debtor did not have a legal or equitable interest in the Property under Connecticut law as of the Petition Date, the exemption provisions of Section 522 cannot be applied at the Debtor's behest in respect of the Property. The Debtor claims an equitable interest in the Property under Connecticut law as beneficiary of a resulting trust in respect of the same as of the Petition Date. That claim is analyzed below.

 Under Connecticut law,

"[r]esulting trusts ... arise, notably, when the purchase money for property is paid by one and the legal title is taken in the name of another. In such a case a trust arises *at once* in favor of the person paying the money, and the holder of the legal title becomes a trustee for him. This result follows the natural presumption that a purchase will inure to him who furnishes the purchase price ...."

---

10. The parties now agree that such advice (if it indeed was given) was erroneous. *See* 12 U.S.C. § 1701j–3(d)(6) (prohibiting enforcement by a mortgage lender of its rights under a due-on-sale clause in respect of a transfer by a borrower to his or her spouse).

11. *See, e.g.,* 11 U.S.C. § 541(a)(5)(A) (inheritances to which the debtor becomes entitled within 180 days after the petition date).

*Belford v. Cantavero (In re Bassett)*, 221 B.R. 49, 54 (Bankr.D.Conn.1998) (Dabrowski, B.J.) (*quoting Ward v. Ward*, 59 Conn. 188, 195, 22 A. 149 (1890)) (alteration in original; emphasis added).[12] However, the "presumed intent from which the law infers a trust may be rebutted by proof of contrary intent," *Farrah v. Farrah*, 187 Conn. 495, 500, 446 A.2d 1075 (1982). "If the nominal grantee is a natural object of the payor's bounty, then the presumption of a trust is rebutted, because the law presumes a ... [gift]." *Id.* The presumption of gift applies with respect to interspousal transfers. *See, e.g., White v. Amenta*, 110 Conn. 314, 148 A. 345 (1930) (wife paid consideration for property which husband took in his own name). However, the presumption of gift itself can be rebutted by proof of contrary intent. *See id.; Fox v. Shanley*, 94 Conn. 350, 109 A. 249, 252 (1920) ("When a man buys real estate with his own money and has it conveyed to his wife ..., prima facie a gift is presumed. But this is a presumption of fact rather than one of law, and may always be rebutted." (citation and internal quotations marks omitted)).

▮▮▮▮ The apparent majority view is that the person seeking to establish a resulting trust must establish the trust (including rebuttal of any applicable presumption of gift) by clear and convincing evidence.[13] *See Bogert on Trusts and Trustees* § 464. *Accord* Austin Wakeman Scott & William Franklin Fratcher, *The Law of Trusts* ("*Scott on Trusts* ") § 458 n. 5 at 286–89 (4th ed.1989) (collecting cases in accord with the foregoing). *But compare Scott on Trusts* § 458 (criticizing "clear and convincing" evidence standard) *with Bogert on Trusts and Trustees* § 464 (explaining reasons for such standard). However, it is unclear from the Connecticut cases whether the Connecticut courts would endorse that view. *Compare Lord v. Stavrakis*, 6 Conn.App. 161, 503 A.2d 629, *cert. denied*, 199 Conn. 804, 506 A.2d 146 (1986) (dicta; clear and convincing evidence test); *Merrill Lynch Interfunding, Inc. v. Argenti*, 30 Conn. L. Rptr. 130, 2001 WL 951339, at *4 (Conn.Super. July 20, 2001) (dicta; same); *with Farrah v. Farrah*, 187 Conn. at 500–01, 446 A.2d 1075 (dicta; preponderance of the evidence test); *Langlais v. Kozlowski*, No. CV 960255018S, 1998 WL 81882, at *3 (Conn.Super.Feb.18, 1998) (dicta; same). Accordingly, because the court concludes below that the Debtor failed to satisfy even the less demanding standard of proof, the court will assume (but not decide) that

---

12. The creditors of the resulting trustee can obtain no interest in the property in question by attaching it for his debts, notwithstanding the fact that there has been no decree establishing the resulting trust. The creditors of the payor, on the other hand, can proceed against the property on the theory that their debtor is its equitable owner, without a decree establishing that fact. ...

George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* ("*Bogert on Trusts and Trustees*") § 454 (2d ed. rev.1991). Arguably, based upon the above and the foregoing, if the payor becomes beneficiary under a resulting trust in respect of an interest in property of a value equal to her payment, then the payor receives "reasonably equivalent value"

for such payment within the purview of applicable fraudulent transfer laws.

13. Under Rule 4003(c) of the Federal Rules of Bankruptcy Procedure, the Trustee bears the risk of non-persuasion on an objection to an exemption. However, "[d]espite the ultimate burden of persuasion resting on the ... [Trustee], the party seeking to establish the existence of a resulting trust has the burden of proving the facts necessary to ... [establish] a resulting trust relationship," *In re Bassett*, 221 B.R. at 53. With respect to the standard of proof required to establish the existence of the trust, the same standard applies in bankruptcy as outside of bankruptcy. *Cf. Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

the "preponderance of the evidence" standard applies here.

## B. Application of Law to Facts

■ The court is not persuaded that the Debtor's funding of the Down Payment was not intended as a gift to her husband. The Debtor's entry into the agreements with the real estate agent and the mortgage brokers (together with her payment of the broker's fee from a joint account with her husband) at most tend to prove only that, at some point prior to closing, the Debtor may have intended to take a record interest in the Property. However, the Debtor could have changed her mind subsequently and decided to proceed at closing in accordance with a reasonable interpretation of the mortgage brokers' alleged advice: that (subject to the mortgage) the Debtor's husband receive sole and absolute title (i.e., with no resulting trust) to the Property. That state of title would not have been inconsistent with the Debtor's stated intent of contributing toward the purchase of a home in which she and her family would live.

It is true that the Debtor testified at the Hearing as to her intent not to make a gift to her husband; that testimony presumably is entitled to some weight. However, the weight to be accorded to that testimony is adversely affected by the fact that the Debtor has not maintained a consistent position throughout this case. Specifically, the Debtor did not list her "trust" interest in the Property in the Schedules which were signed under penalty of perjury. *Cf. Davenport v. S.I. Securities (In re Davenport)*, 268 B.R. 159, 162 (Bankr.N.D.Ill.

2001) (resulting trust found when, among other things, the debtor's original "bankruptcy schedules showed an equitable interest in the property . . . ."). In fact, the Debtor's "trust" theory made its first appearance only after the Meeting when it became obvious that the Trustee was considering a fraudulent transfer action against the Debtor's husband to recover the value of the Down Payment. *Cf.* note 12, *supra.* Given the foregoing, all of the Debtor's evidence (taken together) fails to rebut the presumption of gift to her husband and, thus, fails to establish the existence of a resulting trust for her benefit in respect of the Property at *any* time. Accordingly, Section 522(b)'s "property of the estate" requirement has not been met in respect of the Property.[14]

## IV. Conclusion

For the foregoing reasons, an order will be entered sustaining the Amended Objection.

■

**14.** To the extent (if any) that the Debtor argues that her expectation of continuing to live in the family home (i.e., the Property) and/or her right to equitable distribution in respect of the Property in the event of a divorce (no divorce is pending) gives her an exemptible interest in the Property, such argument is rejected. *Cf. In re Cohen*, 263 B.R. 724 (Bankr.D.N.J.2001). Because the court finds that the Debtor has failed to establish a resulting trust in respect of the Property, the court does not consider whether a beneficial interest under a resulting trust may be exempted under the Connecticut homestead exemption.