## UNITED STATES v. KNOX-POWELL-STOCKTON CO., Inc., Limited, et al.*

### No. 7703.

Circuit Court of Appeals, Ninth Circuit.

April 20, 1936.

*Rehearing denied June 29, 1936.

Frank J. Wideman, Asst. Atty. Gen., J. Louis Monarch, Lester L. Gibson, and Ellis N. Slack, Sp. Assts. to the Atty. Gen., and Peirson M. Hall, U. S. Atty., and Alva C. Baird, Asst. U. S. Atty., both of Los Angeles, Cal., for the United States.

Chandler, Wright & Ward and John F. Gilbert, all of Los Angeles, Cal., for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order of the District Court confirming the order of a referee in bankruptcy which rejected a claim of the United States for income taxes assessed against the bankrupt corporation for the year 1930.

The bankrupt corporation, hereinafter called the taxpayer, was, during the times material to be considered, engaged in drilling oil wells upon lands situate in the city of Los Angeles, Cal., and in selling oil and gas therefrom. As a means of financing its operations, it entered into certain agreements evidenced in transferable certificates, each in form as follows:

"Participating Interest in Oil and Gas Production.

"For and in consideration of the sum of —— Dollars, receipt whereof is hereby acknowledged, the Knox-Powell-Stockton Co., Inc. (Limited) hereby assigns to —— —— per cent interest in and to all revenues derived from the sale of oil and/or gas produced and saved from the W. G. Davis Oil Well No. 1, located on Lots 10 and 12, Block B, Ocean Strand Tract, city of Los Angeles, *operated by said company,* payable within fifteen (15) days from the date said revenues are received by the company from the corporation or firm purchasing said oil or gas.

"Provided, however, that for the purpose of defraying *operating costs* and establishing a reserve fund to provide for contingencies, there shall be withheld by the company the sum of fifteen cents ($0.15) per day for each one tenth of one per cent. interest of said oil production, the unused portion of which shall be held in trust for the certificate holders and to be returned to them as their interests may appear when oil drilling operations on said premises shall have been abandoned, or when in the judgment of the directors of the company, no further necessity exists for the maintenance of said fund. All assignments of this certificate shall carry with it an assignment of all interest in any such fund.

"Nothing herein shall be construed to constitute the certificate holder as a partner in said enterprise, it being the intent of the parties that said certificate holder shall participate only in the revenues derived from the sale of gas or oil as his interest may appear." (Italics supplied.)

Here, as in the case of Rogan v. Blue Ridge Oil Company, Ltd. (C.C.A.) 83 F. (2d) 420, today decided, the certificate holder's share is to furnish funds for operation *after* completion of the well.

During 1930, taxpayer received as consideration for the contracts evidenced by these certificates $298,100, less $34,687.78 commissions. Asserting this to be income, the United States filed a claim below for $34,109.11 assessed as income tax on the total consideration for the contracts. The trustee in bankruptcy and the District Court, in denying the claim, ruled that the receipts did not constitute income.

The disposition of this case is governed by the principles set forth in Rogan v. Blue Ridge Oil Company. There are only two differences between the two cases material to be considered.

In the first place, the Knox-Powell-Stockton participating certificate purports to assign to the holder a fractional interest in the proceeds of the sale of oil to be produced from a specified well, whereas the Blue Ridge certificate gave a present assignment of the oil to be produced. This difference has no bearing upon the question whether the consideration for the contracts constituted income to the taxpayer. Regardless of which form of certificate was used, if the lessee created in the certificate holders interests in a well already developed, or, if the lessee did not use up the moneys received from the certificate holders in drilling a well from which the certificate holders were to receive fractional shares in proceeds or product, income would result to the lessee.

In the second place, the stipulation of facts in the present case sets out in more detail what was done with the proceeds of certificate sales than does the evidence in the Blue Ridge Case. It is stipulated that all the participating interests from which the taxpayer derived the sum alleged by the United States to be income are exemplified by the certificate which has been set out in this opinion. Thus it is seen that the certificates gave each holder an interest only in the revenue from a particular well, not in the total revenue from all the wells. The stipulation then recites:

"That the money derived by the bankrupt from the sale of said participating interests was used by the bankrupt in the drilling of *four* oil wells in the Venice Del Rey Oil Field except such part of said funds so received as were paid out as commission for the sale of the interests.

"That oil and gas were produced from said oil and gas *wells.* That *payments of proceeds of production from said oil and gas wells* was made by the bankrupt to the *owners* of the participating interests. * * *" (Italics supplied.)

■ We know from this recitation that all the money taken in by the taxpayer was used in the drilling of four wells, and that each certificate contract evidenced participation to some degree in some particular one of the four wells. The stipulation is silent, however, as to the relative number of contracts as to any well or amount of

participancy in interest in the particular well or its net revenue. It is silent as to the cost of the drilling of any one of the wells. Thus it is quite possible that certificate purchasers holding an interest in the proceeds of "W. G. Davis Oil Well No. 1" paid for their certificates more than it cost the taxpayer lessee to drill "W. G. Davis Oil Well No. 1." If so, the excess is income to the lessee. It can do with such excess what it pleases. The fact that such excess, if any there was, was used to drill a second well for the revenue of which other participating interests had been contracted, would not make such excess any the less income to the taxpayer lessee. There is obviously no "association" relationship between a group of certificate holders who own interests exclusively in well A and another group holding interests exclusively in well B. And a profit received by the taxpayer lessee in creating an association (assuming that one was created) in the production of well A, is no less income to it because it chooses to devote such profit to the operations of an association created in the production of well B.

Enough has been said to illustrate how income may have been received by the taxpayer in the consideration for the contracts to participate in revenues from one or another of the four wells even though the total amount received was entirely consumed in the drilling of the four wells. The burden is upon the taxpayer to show what part, if any, of the moneys received was not income. Having failed to do so, the prima facie showing of the assessment is not overcome, and the tax must be sustained.

Order reversed.