RALEIGH, CHAPTER 7 TRUSTEE FOR THE ESTATE OF
STOECKER *v.* ILLINOIS DEPARTMENT
OF REVENUE

No. 99–387.   Argued April 17, 2000—Decided May 30, 2000

SOUTER, J., delivered the opinion for a unanimous Court.

*Robert Radasevich* argued the cause for petitioner. With him on the briefs were *Phil C. Neal, David A. Eide,* and *John W. Guarisco.*

*A. Benjamin Goldgar,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the brief were *James E. Ryan,* Attorney General, *Joel D. Bertocchi,* Solicitor General, and *James D. Newbold,* Assistant Attorney General.

*Deputy Solicitor General Wallace* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Waxman, Act-*

*ing Assistant Attorney General Junghans, Kent L. Jones, Kenneth L. Greene,* and *Steven W. Parks.**

JUSTICE SOUTER delivered the opinion of the Court.

The question raised here is who bears the burden of proof on a tax claim in bankruptcy court when the substantive law creating the tax obligation puts the burden on the taxpayer (in this case, the trustee in bankruptcy). We hold that bankruptcy does not alter the burden imposed by the substantive law.

I

The issue of state tax liability in question had its genesis in the purchase of an airplane by Chandler Enterprises, Inc., a now-defunct Illinois company. William J. Stoecker, for whom petitioner Raleigh is the trustee in bankruptcy, was president of Chandler in 1988, when Chandler entered into a lease-purchase agreement for the plane, moved it to Illinois,

---

*Briefs of *amici curiae* urging affirmance were filed for the Pension Benefit Guaranty Corporation by *James J. Keightley, William G. Beyer, Israel Goldowitz, Nathaniel Rayle,* and *Charles G. Cole;* for the State of New Mexico et al. by *Patricia A. Madrid,* Attorney General of New Mexico, *Donald F. Harris,* Special Assistant Attorney General, and *James I. Shepard,* joined by the Attorneys General for their respective States as follows: *Janet Napolitano* of Arizona, *Bill Lockyer* of California, *Ken Salazar* of Colorado, *Richard Blumenthal* of Connecticut, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *Thomas J. Miller* of Iowa, *Carla J. Stovall* of Kansas, *Richard P. Ieyoub* of Louisiana, *Andrew Ketterer* of Maine, *J. Joseph Curran, Jr.,* of Maryland, *Thomas F. Reilly* of Massachusetts, *Jennifer M. Granholm* of Michigan, *Mike Hatch* of Minnesota, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *John J. Farmer, Jr.,* of New Jersey, *Heidi Heitkamp* of North Dakota, *Betty D. Montgomery* of Ohio, *Hardy Myers* of Oregon, *D. Michael Fisher* of Pennsylvania, *Sheldon Whitehouse* of Rhode Island, *Mark Barnett* of South Dakota, *Paul G. Summers* of Tennessee, *Jan Graham* of Utah, *William H. Sorrell* of Vermont, *Christine O. Gregoire* of Washington, and *Gay Woodhouse* of Wyoming; and for the Council of State Governments et al. by *Richard Ruda, James I. Crowley,* and *Steven H. Goldblatt.*

and ultimately took title under the agreement. See *In re Stoecker*, 179 F. 3d 546, 548 (CA7 1999).

According to respondent State Department of Revenue, the transaction was subject to the Illinois use tax, a sales-tax substitute imposed on Illinois residents such as Chandler who buy out of State. If the seller does not remit the tax, the buyer must, and, when buying a plane, must file a return and pay the tax within 30 days after the aircraft enters the State. Ill. Comp. Stat., ch. 35, § 105/10 (1999). Chandler failed to do this.

When the State discovers a failure to file and pay taxes, its Department of Revenue (the respondent here) determines the amount of tax due and issues a Notice of Tax Liability to the taxpayer. §§ 105/12, 120/4. Unless the taxpayer protests within the time provided, the assessment becomes final, though still subject to judicial review in the Illinois circuit court. §§ 120/4, 12.

Illinois law also provides that any corporate officer "who has the control, supervision or responsibility of filing returns and making payment of the amount of any . . . tax . . . who wilfully fails to file the return or make the payment . . . shall be personally liable for a penalty equal to the total amount of tax unpaid by the [corporation]." § 735/3–7. The department determines the amount, and its determination is "prima facie evidence of a penalty due," *ibid.*, though a Notice of Penalty Liability issued under this provision is open to challenge much like the antecedent Notice of Tax Liability.

By the time the department discovered the unpaid tax in this case, Chandler was defunct and Stoecker was in bankruptcy. The department issued both a Notice of Tax Liability against Chandler and a Notice of Penalty Liability against Stoecker. See 179 F. 3d, at 549.

The record evidence about Chandler's operations is minimal. A person named Pluhar acted as its financial officer.

There is no evidence directly addressing Stoecker's role in the filing of Chandler's tax returns or the payment of any taxes, and so no affirmative proof that he either was responsible for or willfully evaded the payment of the use tax, see *id.*, at 550. This evidentiary dearth is not necessarily dispositive, however, due to the provision of Illinois law shifting the burden of proof, on both production and persuasion, to the responsible officer once a Notice of Penalty Liability is issued, see *Branson* v. *Department of Revenue*, 168 Ill. 2d 247, 256–261, 659 N. E. 2d 961, 966–968 (1995). The Court of Appeals for the Seventh Circuit accordingly ruled for the Department of Revenue. 179 F. 3d, at 550.

The Court of Appeals thought the trustee may have satisfied his burden of production by identifying Pluhar as the financial officer but, in any event, had not satisfied his burden of persuasion. Because Stoecker was the president and, as far as the record showed, he and Pluhar were the only officers, each would have been involved in Chandler's tax affairs. *Ibid.* While it is true that failure to pay must be willful (at least grossly negligent) to justify the penalty under Illinois law, see *Branson, supra*, at 254–255, 659 N. E. 2d, at 965, and true that Chandler had an opinion letter from a reputable lawyer that no tax was due because of certain details of the lease-purchase agreement, there was no evidence that Stoecker ever saw the letter or relied on it, and nothing else bearing on the issue of willfulness. See 179 F. 3d, at 550–551.

Obviously, the burden of proof was critical to the resolution of the case, which the Department of Revenue won because the Court of Appeals held that the burden remained on the trustee, just as it would have been on the taxpayer had the proceedings taken place outside of bankruptcy. The Courts of Appeals are divided on this point: the Seventh Circuit joined the Third and Fourth Circuits in leaving the burden on the taxpayer. See *Resyn Corp.* v. *United States*,

851 F. 2d 660, 663 (CA3 1988); *In re Landbank Equity Corp.*, 973 F. 2d 265, 270–271 (CA4 1992). The Courts of Appeals for the Fifth, Eighth, Ninth, and Tenth Circuits have come out the other way. See *In re Placid Oil Co.*, 988 F. 2d 554, 557 (CA5 1993); *In re Brown*, 82 F. 3d 801, 804–805 (CA8 1996); *In re Macfarlane*, 83 F. 3d 1041, 1044–1045 (CA9 1996), cert. denied, 520 U. S. 1115 (1997); *In re Fullmer*, 962 F. 2d 1463, 1466 (CA10 1992). We granted certiorari to resolve the issue, 528 U. S. 1068 (2000), and now affirm.

## II

Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code. See *Butner* v. *United States*, 440 U. S. 48, 55 (1979); *Vanston Bondholders Protective Comm.* v. *Green*, 329 U. S. 156, 161–162 (1946). The "basic federal rule" in bankruptcy is that state law governs the substance of claims, *Butner, supra*, at 57, Congress having "generally left the determination of property rights in the assets of a bankrupt's estate to state law," 440 U. S., at 54 (footnote omitted). "Unless some federal interest requires a different result, there is no reason why [the state] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.*, at 55. In this case, the bankruptcy estate's obligation to the Illinois Department of Revenue is established by that State's tax code, which puts the burden of proof on the responsible officer of the taxpayer, see *Branson, supra*, at 260–262, 659 N. E. 2d, at 968.

The scope of the obligation is the issue here. Do the State's right and the taxpayer's obligation include the burden of proof? Our cases point to an affirmative answer. Given its importance to the outcome of cases, we have long held the burden of proof to be a "substantive" aspect of a

claim. See, *e. g.*, *Director, Office of Workers' Compensation Programs* v. *Greenwich Collieries*, 512 U. S. 267, 271 (1994); *Dick* v. *New York Life Ins. Co.*, 359 U. S. 437, 446 (1959); *Garrett* v. *Moore-McCormack Co.*, 317 U. S. 239, 249 (1942). That is, the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it.

Tax law is no candidate for exception from this general rule, for the very fact that the burden of proof has often been placed on the taxpayer indicates how critical the burden rule is, and reflects several compelling rationales: the vital interest of the government in acquiring its lifeblood, revenue, see *Arkansas* v. *Farm Credit Servs. of Central Ark.*, 520 U. S. 821, 826 (1997); the taxpayer's readier access to the relevant information, see *United States* v. *Rexach*, 482 F. 2d 10, 16 (CA1), cert. denied, 414 U. S. 1039 (1973); and the importance of encouraging voluntary compliance by giving taxpayers incentives to self-report and to keep adequate records in case of dispute, see *United States* v. *Bisceglia*, 420 U. S. 141, 145 (1975). These are powerful justifications not to be disregarded lightly.[1]

Congress of course may do what it likes with entitlements in bankruptcy, but there is no sign that Congress meant to alter the burdens of production and persuasion on tax claims. The Code in several places, to be sure, establishes particular burdens of proof. See, *e. g.*, 11 U. S. C. § 362(g) (relief from automatic stay), § 363(*o*) (adequate protection for creditors),

---

[1] It is true that a trustee may have less access to the facts than a taxpayer with personal knowledge, but the trustee takes custody of the taxpayer's records, see 11 U. S. C. § 521(4), and may have greater access to the taxpayer than a creditor. Even if the trustee's advantage is somewhat less than the original taxpayer's, the difference hardly overcomes the compelling justifications for shifting the burden of proof. The government, of course, is in no better position than it ever was, and remains without access to sources of proof when the taxpayer has not kept sufficient documentation.

§ 364(d)(2) (same), § 547(g) (avoidability of preferential transfer), § 1129(d) (confirmation of plan for purpose of avoiding taxes). But the Code makes no provision for altering the burden on a tax claim, and its silence says that no change was intended.[2]

### III

The trustee looks for an advantage in the very silence of the Code, however, first by arguing that actual, historical practice favored trustees under the Bankruptcy Act of 1898 and various pre-Code revisions up to the current Code's enactment in 1978. He says that courts operating in the days of the Bankruptcy Act, which was silent on the burden to prove the validity of claims, almost uniformly placed the burden on those seeking a share of the bankruptcy estate. Because the Code generally incorporates pre-Code practice in the absence of explicit revision, the argument goes, and because the Code is silent here, we should follow the pre-Code practice even when this would reverse the burden imposed outside bankruptcy. This tradition makes sense, petitioner urges, because in bankruptcy tax authorities are no longer opposed to the original taxpayer, and the choice is no longer merely whether the tax claim is paid but whether other innocent creditors must share the bankruptcy estate with the taxing government.

We, however, find history less availing to the trustee than he says. While some pre-Code cases put the burden of proof

---

[2] The legislative history indicates that the burden of proof on the issue of establishing claims was left to the Rules of Bankruptcy Procedure. See S. Rep. No. 95–989, p. 62 (1978); H. R. Rep. No. 95–595, p. 352 (1977). The Bankruptcy Rules are silent on the burden of proof for claims; while Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim (the name for the proper form for filing a claim against a debtor) is "prima facie evidence of the validity and amount of the claim," this rule does not address the burden of proof when a trustee disputes a claim. The Rules thus provide no additional guidance.

on taxing authorities,[3] others put it on the trustee,[4] and still others cannot be fathomed.[5]   This state of things is the end of the argument, for without the weight of solid authority on the trustee's side, we cannot treat the Code as predicated on an alteration of the substantive law of obligations once a taxpayer enters bankruptcy.   Cf. *United Sav. Assn. of Tex.* v. *Timbers of Inwood Forest Associates, Ltd.,* 484 U. S. 365, 381–382 (1988) ("The at best divided [pre-Code] authority . . . removes all cause for wonder that the alleged departure from it should not have been commented upon in the legislative history").

The trustee makes a different appeal to Code silence in pointing to language in *Vanston Bondholders Protective Comm.* v. *Green,* 329 U. S. 156 (1946), suggesting that "allowance" of claims is a federal matter.   But "allowance" referred to the ordering of valid claims when that case was decided, see *id.,* at 162–163, and *Vanston,* in fact, concerned

---

[3] See, *e. g., United States* v. *Sampsell,* 224 F. 2d 721, 722–723 (CA9 1955); *In re Avien, Inc.,* 390 F. Supp. 1335, 1341–1342 (EDNY 1975), aff'd, 532 F. 2d 273 (CA2 1976); *In re Gorgeous Blouse Co.,* 106 F. Supp. 465 (SDNY 1952); see also *In re Highway Constr. Co.,* 105 F. 2d 863, 866 (CA6 1939) (apparently accepting lower court's placement of burden of proof on tax authority).

[4] See, *e. g., In re Uneco, Inc.,* 532 F. 2d 1204, 1207 (CA8 1976); *Paschal* v. *Blieden,* 127 F. 2d 398, 401–402 (CA8 1942); *In re Lang Body Co.,* 92 F. 2d 338, 341 (CA6 1937), cert. denied *sub nom. Hipp* v. *Boyle,* 303 U. S. 637 (1938); *United States* v. *Knox-Powell-Stockton Co.,* 83 F. 2d 423, 425 (CA9), cert. denied, 299 U. S. 573 (1936).   Some of these cases, such as *Paschal* and *Lang Body Co.,* appear to confuse the burden of production (which ceases to be relevant upon presentation of a trustee's case) with the burden of persuasion, under tax statutes that shift the entire burden of proof to the taxpayer.   Whatever we make of their reasoning, these cases do not follow the rule whose pedigree petitioner wishes to establish.

[5] See, *e. g., Fiori* v. *Rothensies,* 99 F. 2d 922 (CA3 1938) *(per curiam)* (discussing prima facie value of tax authority's claim, but failing to discuss burden of proof); *Dickinson* v. *Riley,* 86 F. 2d 385 (CA8 1936) (resolving claim without reference to burden of proof); *In re Clayton Magazines, Inc.,* 77 F. 2d 852 (CA2 1935) (same).

distribution of assets, not the validity of claims in the first instance, see *In re Highland Superstores, Inc.*, 154 F. 3d 573, 578 (CA6 1998); *Fahs* v. *Martin*, 224 F. 2d 387, 394–395 (CA5 1955). The burden of proof rule in question here bears only on validity, and as to that the *Vanston* opinion specifically states that "[w]hat claims of creditors are valid and subsisting obligations . . . is to be determined by reference to state law." 329 U. S., at 161 (footnote omitted). Nor is the trustee helped by *City of New York* v. *Saper*, 336 U. S. 328, 332 (1949), which mentions "prov[ing]" government claims in the same manner as other debts; the reference was to the procedure by which proof of claim was submitted and not to the validity of the claim. While it is true that federal law has generally evolved to impose the same procedural requirements for claim submission on tax authorities as on other creditors, *ibid.*, nothing in that evolution has touched the underlying laws on the elements sufficient to prove a valid state claim.

Finally, the trustee argues that the Code-mandated priority enjoyed by taxing authorities over other creditors, see 11 U. S. C. §§ 507(a), 503(b)(1)(B), requires a compensating equality of treatment when it comes to demonstrating validity of claims. But we think his argument distorts the legitimate powers of a bankruptcy court and begs the question about the relevant principle of equality.

Bankruptcy courts do indeed have some equitable powers to adjust rights between creditors. See, *e. g.*, § 510(c) (equitable subordination). That is, within the limits of the Code, courts may reorder distributions from the bankruptcy estate, in whole or in part, for the sake of treating legitimate claimants to the estate equitably. But the scope of a bankruptcy court's equitable power must be understood in the light of the principle of bankruptcy law discussed already, that the validity of a claim is generally a function of underlying substantive law. Bankruptcy courts are not authorized in the name of equity to make wholesale substitution

of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides. See *United States* v. *Reorganized CF&I Fabricators of Utah, Inc.*, 518 U. S. 213, 228–229 (1996); *United States* v. *Noland*, 517 U. S. 535, 543 (1996).

Moreover, even on the assumption that a bankruptcy court were to have a free hand, the case for a rule placing the burden of proof uniformly on all bankruptcy creditors is not self-evidently justified by the trustee's invocation of equality. Certainly the trustee has not shown that equal treatment of all bankruptcy creditors in proving debts is more compelling than equal treatment of comparable creditors in and out of bankruptcy. The latter sort of equality can be provided by a bankruptcy court as a matter of course, whereas the trustee's notion of equality ·could not be uniformly observed consistently with other bankruptcy principles. Consider the case when tax litigation is pending at the time the taxpayer files for bankruptcy. The tax litigation will be subject to an automatic stay, but the stay can be lifted by the bankruptcy court for cause, see 11 U. S. C. § 362(d)(1), which could well include, among other things, a lack of good faith in attempting to avoid tax proceedings, or in attempting to favor private creditors who might escape the disadvantage of a priority tax claim under the trustee's proposed rule. See generally 3 Collier on Bankruptcy ¶ 362.07[6][a], pp. 362–101 to 362–102 (rev. 15th ed. 2000) (noting that bad faith commencement of case justifies lifting stay); *Internal Revenue Service* v. *Bacha*, 166 B. R. 611, 612 (Bkrtcy. Ct. Md. 1993) (lifting automatic stay when bankruptcy filing was attempt to avoid tax proceedings). If the bankruptcy court exercises its discretion to lift the stay, the burden of proof will be on the taxpayer in the pre-existing tax litigation, and a tax liability determination will be final. See 11 U. S. C. § 505(a)(2)(A). We see no reason that Congress would have intended the burden of proof (and consequent vindication of this trustee's vision of equality) to depend on whether

tax authorities have initiated proceedings against a debtor before a bankruptcy filing. Thus, the uncertainty and increased complexity that would be generated by the trustee's position is another reason to stick with the simpler rule, that in the absence of modification expressed in the Bankruptcy Code the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*