**In re INDUSTRIAL COMMERCIAL ELECTRICAL, INC., et al., Debtors.**

**Nos. 02–45451 JBR to 02–45453 JBR.**

United States Bankruptcy Court, D. Massachusetts, Western Division.

Jan. 27, 2004.

among the Chapter 7 Trustee, [Perry] and Isabel [ ] conferred standing upon the debt- or." Bankr.Dec. at 4, n. 1.

Michael J. Fencer, Jager Smith P.C., Boston, MA, for Official Committee of Unsecured Creditors.

Barry Reiferson, Assistant U.S. Attorney, Washington, DC, for United States Internal Revenue Service.

## MEMORANDUM OF DECISION REGARDING OBJECTION TO ADMINISTRATIVE CLAIM OF INTERNAL REVENUE SERVICE [# 348]

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court for an evidentiary hearing on the Objection (the "Objection"), originally filed by the Debtors and now prosecuted by the Official Committee of Unsecured Creditors (the "Committee"), to a Request for Payment of Administrative Taxes dated June 18, 2003 (the "Administrative Proof of Claim") filed by the Internal Revenue Service ("IRS") in the amount of $347,345.56 because of a tentative tax refund paid to the Debtor under I.R.C. § 6411, 26 U.S.C.

§ 6411.[1] For the reasons set forth herein, the Court sustains the Objection.

## BACKGROUND

On September 6, 2002, Industrial Commercial Electrical, Inc. ("ICE"), I.C.E. Management Corp. ("Management"), and I.C.E.–Conn, Inc. (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* Shortly thereafter the Court ordered that an examiner with expanded powers be appointed; one week after the Petition Date, Stephen F. Wentzell (the "Examiner"), a certified public accountant with over 22 years experience, was appointed. At about this same time the Examiner approved the filing of the Debtors' federal corporate income tax returns for the fiscal year ending June 30, 2002 ("FY 2002").

Subsequently the Examiner determined that many of ICE's accounts receivable he was attempting to collect were invalid. Some of the invoices were duplicates; others represented advance billings for services never performed. In addition the Examiner discovered that Management, which collected a management fee based upon the success of ICE and I.C.E.-Conn, had charged a management fee of approximately $450,000 for FY 2002. Because the Examiner determined that ICE had actually sustained losses for this same period, the management fee was reversed. That reversal caused Management's losses for FY 2002 to increase from approximately $600,000 to over $1 million. The Examin-

er, in consultation with Paul Rogers, a certified public accountant specializing in corporate and individual taxation, determined that Management had an increased net operating loss ("NOL") in FY 2002 that could be offset against prior years' income. As a result on or about December 17, 2002, the FY 2002 return for Management and ICE were amended (the "Amended Return") and carry-back claims for Management's fiscal years 1997 to 2001 were asserted. That amendment led to the filing of a Form 1139 by which the tentative refund was sought, asserting a refund due to the Debtors. On May 22, 2003 Management received the tentative refund, colloquially referred to as a "quickie refund."

Less than a month after the Debtors received the quickie refund, the IRS filed the Administrative Proof of Claim pursuant to 11 U.S.C. § 503(b)(1)(B)(ii).[2] According to the cover sheet to which the IRS attached the Administrative Proof of Claim, the IRS described the Claim as "protective" and noted that it would amend the Proof of Claim to "$0.00" if, after examination, it was satisfied with the Amended Returns. On July 9, 2003 the Debtors filed the Objection and sought an expedited hearing on the grounds that the administrative solvency of the estate depended upon a successful resolution of the Administrative Proof of Claim and that a settlement between the Committee and the Debtors' secured lender required immediate resolution of the Claim.

---

1. Section 6411 of the Internal Revenue Code provides, in pertinent part:

   A taxpayer may file an application for a tentative carryback adjustment of the tax for the prior taxable year affected by a net operating loss carryback provided in section 172(b)....

2. Section 503(b)(1)(B)(ii) of the Bankruptcy Code provides:

   After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
   (1)...(B) any tax—
   (ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case....

On July 31, 2003 the Court held a preliminary hearing on the Objection, and at that time, the Committee joined in the Objection. The Debtors proposed that the IRS be given thirty days to review the Amended Returns while the Committee, which would be representing the Debtors at the evidentiary hearing, expressly requested that the Court give the IRS 60 days to conduct the review. Although pointing out that under the Tax Code, the IRS normally has up to three years to challenge a tentative refund, the IRS asked the Court to allow it 90 days to conduct its review. The Court granted the IRS's request and scheduled an evidentiary hearing for November 19, 2003, a date which allowed the IRS more than the 90 days it requested. The Court also issued a Contested Prehearing Order that, among other things, required the Committee and the IRS to file a Joint Prehearing Memorandum, which was to include a list of witnesses each side expected to call at trial, by November 12, 2003.

On August 29, 2003 the IRS filed a proposed a discovery plan and stated that

the subjects on which discovery may be needed are limited to the following:

a) The Debtors' fiscal year 2002 operating losses and the carry-backs of those losses to prior tax years, as claimed by the Debtors.

It also proposed a discovery deadline of November 5, 2003 as did the Committee and the Debtors. The IRS did not indicate that it could not complete whatever discovery it deemed appropriate in the approximately two months left before its proposed discovery deadline. Consequently the Court set November 5, 2003 as the deadline for completion of all discovery.

On November 12, 2003 the Committee submitted a Prehearing Memorandum in which it identified its potential witnesses, including those designated as experts. In its Prehearing Memorandum, the committee specifically addresses the failure of the parties to submit a Joint Memorandum as required by the Contested Prehearing Order.

Counsel to the Committee has conferred with Counsel to the IRS regarding preparation of a joint prehearing memorandum as ordered by the Court. Counsel to the IRS, though, has indicated that he has not been able to obtain from his client any commitment whether it is necessary to proceed to trial on this contested matter . . . .

Prehearing Memorandum of the Committee at page 1, note 1.

On November 17, 2003, two days before the evidentiary hearing and five days after the Joint Prehearing Memorandum was due, the IRS filed an Emergency Motion to Continue, seeking to delay the evidentiary hearing for 30 days, as well as its Prehearing Memorandum. In its Memorandum the IRS stated that "[i]f necessary, the United States will call as a witness an Internal Revenue Service employee with knowledge of the relevant facts." No individual was named, however. Similarly the IRS stated it would call an IRS employee as an expert if necessary. Again though, no individual was identified. Moreover the IRS stated that, in addition to the Administrative Proof of Claim, it would introduce several documents it averred were in the Debtors' possession, custody or control.

In its Emergency Motion to Continue, the IRS, citing the usual three years to conduct its review, requested an additional 30 days "to conduct a thorough investigation . . . and to provide all parties with additional information." Although the IRS asserted that it had conducted a preliminary investigation and concluded that there were "issues of concern," it identified

those issues in only a cursory fashion as follows:

> The Debtors have expressed their lack of knowledge as to "any basis on which to invalidate [the Debtors'] application for tentative refund" ..., but the amended tax return that was filed for the loss year by I.C.E. Management Corp., which, among other things, claims $1,000,000 of expenses, including a $450,000 deduction for an amount apparently due to an affiliate for management despite the fact that it appears to have had no income, raises questions on its face.

The IRS acknowledged that it had not completed its review because "its scarce resources were deployed elsewhere."

In both the Emergency Motion to Continue and its Prehearing Memorandum, the IRS raised the issue of the burden of proof and asserted that the Administrative Proof of Claim was "prima facie evidence of the validity and amount of the claim." It asserted that the Debtors had the burden to prove, by "substantial evidence," that the IRS was not entitled to reverse the quickie refund, a position vigorously contested by the Committee. The IRS argued that, without the benefit of an IRS audit to alert the Debtors to the precise areas of concern, the Debtors could not meet their burden of proof. In effect the IRS argued that it was seeking the continuance to aid the Debtors and the Committee in meeting a burden made almost impossible by the IRS's failure to act within the time limits requested by the IRS and set by the Court. The Court denied the continuance.

One day prior to the commencement of the evidentiary hearing, the Committee filed a motion to prohibit the IRS's introduction of evidence at trial. The Committee also alleged that the IRS failed to make the automatic disclosures required by Fed.R.Civ.P. 26. The IRS countered that it had made such disclosures and its certification of the same appears on the docket. It acknowledged, however, that it disclosures were "minimal." It did not dispute that it failed to identify any witnesses and stated that it did not intend to offer any direct testimony thereby mooting the Committee's motion. It also did not contest the Committee's representation that the Committee had provided Lee Anderson of the IRS copies of all documents which the IRS initially requested and that only recently had the IRS requested further documentation in response to which the Committee directed the IRS to Henry Frye, the Debtors' previous accountant who prepared the returns which the IRS sought.

Immediately prior to the evidentiary hearing, the Committee requested that the Objection be sustained as the IRS bore the burden of proving it was entitled to reverse the tentative refund and, in light of the IRS's statement that it did not intend to introduce any testimony, the IRS had no hope of meeting its burden. The IRS challenged the assertion that it bore the burden and argued that, even if it introduced no evidence, the Objection fails unless the Committee or the Debtors could substantiate each item upon which the tentative refund was based. The Court denied the Committee's request primarily in the interest of judicial economy: in the event that the Committee bore the burden, its witnesses were present. Similarly, although the IRS was barred from introducing any direct evidence, it had an IRS employee present for the hearing.

The Committee called two witnesses to testify at the hearing: the Examiner and Paul Rogers, the tax professional employed by the Examiner. The IRS conducted cross-examination of the witnesses. Three exhibits [ICE's Amended Return

for FY 2002 to which its original FY 2002 return was attached (Exhibit 1); Management's Amended Return for FY 2002 to which its original FY 2002 return was attached (Exhibit 2); and the Corporate Application for Tentative Refund including the applicable returns against which the NOL's were to be applied (Exhibit 3)] were admitted. At the conclusion of the hearing, the Court ordered the parties to file memoranda addressing the issue of which side bears the burden of proof.

## POSITION OF THE PARTIES

The Committee, citing *Woburn Assoc. v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1, 5 (1st Cir.1992), a case involving section 503(b)(1)(B)(I), argues that "a party seeking payment of a claim as an administrative priority bears the burden as to that entitlement." Memorandum of Law of Official Committee of Unsecured Creditors Regarding Administrative Claim of Internal Revenue Service at page 4, note 1. The Court understands the Committee's argument to be that the IRS has the burden to show that its claim is entitled to administrative priority. That burden, if it can be called such, is not a difficult one for the IRS to meet; section 503(b)(1)(B)(ii) of the Bankruptcy Code, upon which the IRS relies, expressly denotes this type of claim as an administrative claim.

The burden of proof that is crucial to the resolution of the Objection relates to the burden of proving, or disproving, the IRS's entitlement to the return of the quickie refund. Although the Committee originally asserted that the IRS bore that burden of proof, in its post-hearing memorandum, the Committee acknowledges that it had the initial burden of producing "credible evidence" that the Debtor was entitled to the refund and argued that it met that burden. Therefore it asserted that the burden shifted to the IRS pursuant to

section 7491(a) of the Internal Revenue Code, 26 U.S.C. § 7491, to prove entitlement to a return of the tentative refund and argued that the IRS did not and could not meet that burden.

The IRS claimed that the burden is, and always was, on the Committee. Although it agrees that the Committee could have shifted the burden to the IRS if the Committee had come forward with "credible evidence" of the Debtor's entitlement to the refund, the IRS maintains that the Committee failed to meet its burden.

## DISCUSSION

### BURDEN OF PROOF

"Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 1955, 147 L.Ed.2d 13 (2000) (citations omitted). The burden of proof is "a 'substantive' aspect of a claim.... That is, the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." *Id.* at 20–21, 120 S.Ct. at 1955 (citations omitted).

In most instances the burden to prove entitlement to a claim lies with the creditor. That general proposition, however, is not true for most tax claims. "As a general rule, the burden of proof is on the taxpayer in tax refund cases." *Okerlund v. United States*, 53 Fed.Cl. 341, 356 (Fed.Cl.2002) (citing *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933)), reconsideration denied 2003 WL 1547563. Although a quickie refund in not a refund in the true sense of the word, I.R.C. § 6411(a), 26 U.S.C.

**30**

§ 6411(a),[3] the parties now agree that the burden of proof,[4] at least initially, lies with the taxpayer. They also agree that section 7491 of the Internal Revenue Code, 26 U.S.C. § 7491,[5] shifts that burden to the IRS if the taxpayer, not otherwise barred from taking advantage of that section, produces "credible evidence." Although the Internal Revenue Code does not define "credible evidence," the legislative history contains both a definition and a brief description of how Congress intended that this section be applied.

> The burden will shift to the Secretary under this provision only if the taxpayer first introduces credible evidence with respect to a factual issue relevant to ascertaining the taxpayer's income tax liability. Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness). A taxpayer has not produced credible evidence for these purposes if the taxpayer merely makes implausible factual assertions, frivolous claims, or tax-protestor-type arguments. The introduction of evidence will not meet this standard if the court is not convinced that it is worthy of belief. If after evidence from both sides, the court believes that the evidence is equally balanced, the court shall find that the secretary has not sustained his burden of proof.

H.R.Conf.Rep. No. 105-599, at 240-41 (1998), 1998-3 C.B. 747, at 994-95, 1998 U.S.C.C.A.N. 288, at 297. *See also Griffin v. C.I.R.*, 315 F.3d 1017, 1021 (8th Cir. 2003); *Okerlund*, 53 Fed.Cl. at 356 n. 23.

Section 7491 was added to the Internal Revenue Code as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. 105-206, 112 Stat. 685, in an effort to level the playing field in tax cases.

> The Committee is concerned that individual and small business taxpayers frequently are at a disadvantage when forced to litigate with the Internal Revenue Service. The Committee believes that the present burden of proof rules

---

**3.** Section 6411(a) of the Internal Revenue Code provides, in relevant part:
> "Except for purposes of applying section 6611(f)(3)(B), an application under this subsection shall not constitute a claim for credit or refund."

**4.** " 'Burden of proof' is a term which describes two different concepts, (1) the burden of persuasion, which under the traditional view never shifts from one party to the other, at any stage of the proceedings, and (2) the burden of going forward with the evidence, which may shift back and forth between the parties as the trial progresses." *Ambrose v. Wheatley*, 321 F.Supp. 1220, 1223 (D.Del. 1971). The issue before the Court may be framed as which party bears the burden of persuasion.

**5.** In relevant part, that section provides:
> (a) Burden shifts where taxpayer produces credible evidence.—

(1) General rule.—If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.
(2) Limitations.—Paragraph (1) shall apply with respect to an issue only if—
(A) the taxpayer has complied with the requirements under this title to substantiate any item;
(B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; and
(C) in the case of a partnership, corporation, or trust, the taxpayer is described in section 7430(c)(4)(A)(ii).

contribute to that disadvantage. The Committee believes that, all other things being equal, facts asserted by the individual and small business taxpayers who cooperate with the IRS and satisfy relevant recordkeeping and substantiation requirements should be accepted. The Committee believes that shifting the burden of proof to the Secretary in such circumstances will create a better balance between the IRS and such taxpayers, without encouraging tax avoidance. H.R. Rep. 105–364(1) at 56; S. Rep. 105–174 at 44.

CREDIBLE EVIDENCE

■ The Examiner testified that he did not have any first-hand knowledge of the transactional details reflected in the Debtors' FY 2002 returns. After those returns were filed, however, he had conversations with the principals of the Debtors' account debtors and as a result of those conversations he determined that many of ICE's accounts receivable were incorrect. Some were duplicate billings; others were erroneous advance billings. As a result of learning this information, the Examiner determined that the FY 2002 returns which he had authorized be filed shortly after his appointment should be amended.

The Examiner consulted, and subsequently retained, Paul Rogers to assist the Examiner with the Debtors' taxes. Mr. Rogers reviewed ICE's and Management's FY 2002 returns and prepared amended returns. Mr. Rogers testified that he determined that both ICE and to a lesser extent, Management had losses in FY 2002 "[b]ased upon the tax returns as originally prepared by the accountants and the material given to [him] by Mr. Wentzell...."

Although he did not know "the exact detail" of how Management calculated its management fee, his general understanding of management fees was that they "are charged for the success of business operations." Moreover he testified, as did the Examiner, that he and the Examiner discussed the facts and circumstances relevant to the amendments which the Court infers include the calculation of Management's fee. Management charged ICE management fees of $450,000 for FY 2002; ICE, however, sustained losses for this period. Therefore Mr. Rogers determined that the management fee should be reversed. As a result Management's losses increased from $600,000 to $1,000,060. Then, using the tax returns prepared by the Debtors' accountant for the previous four tax years, Mr. Rogers adjusted the income solely to account for the increased loss incurred by Management as a result of the reversal of the FY 2002 management fee.

The IRS attempted to make much of the fact that neither the Examiner nor Mr. Rogers had any first-hand knowledge of the operations of the Debtors for the tax years for which the net operating losses were carried back. That neither the Examiner nor Mr. Rogers undertook an independent audit of all of the relevant transactions, however, is irrelevant and does not demonstrate that their seeking the refund was inappropriate. Mr. Rogers is an expert as is the Examiner. As such they are not required to testify as to each fact underlying their ultimate opinions. Fed. R.Evid. 705.[6] Further, given the IRS's lack of notice as to the substantive basis for its Administrative Proof of Claim, neither the Examiner nor Mr. Rogers had all

---

6. Fed. R. Evidence 705 provides:

The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

of the Debtors' books and records before them during the hearing.[7] Thus there were some questions which they were unable to answer. Their inability to provide the specific information at trial does not prove that the information does not exist and that their reliance upon the Debtor's books and records was unreasonable. Moreover, if the Court were to accept the IRS's position, no trustee or examiner would ever be permitted to correct or amend a tax return and the unequal playing field which Congress wanted to level would remain skewed in the IRS's favor.

Both the Examiner and Mr. Rogers offered credible testimony. They amended the returns consistent with the information available to them and there is nothing to suggest that their reliance upon returns prepared by prior accountants was unreasonable or unreliable.

"The Court weighs the credibility of an expert's testimony in light of his or her qualifications and the evidence before the Court. The Court may either accept the expert opinion in its entirety, accept portions of the expert's opinion, or reject the opinion altogether and reach a determination on its own after examining the evidence in the record. *Helvering v. Nat'l Grocery Co.*, 304 U.S. 282, 295, 58 S.Ct. 932, 82 L.Ed. 1346 (1938); *Lukens v. Comm'r*, 945 F.2d 92, 96 (5th Cir. 1991), aff'g 58 T.C.M. (CCH) 1470, 1990 WL 16353 (1990)." *Okerlund*, 53 Fed. Cl. at 345.

■ Moreover the definition of credible evidence indicates it is not a high threshold for a taxpayer to meet. It does not rise to the level of a preponderance of the evidence. Indeed, if a taxpayer and the IRS present equally balanced testimony, the IRS has not met its burden. If the IRS relies solely upon a judicial presumption that its position is correct-as it would appear to be doing in this case by its lack of participation in any meaningful way, the IRS has not met its burden. Rather as the legislative history indicates, a court should refuse to shift the burden when a taxpayer's "evidence" is implausible or frivolous. The evidence presented in this case was neither. The experts' testimony, especially that of Mr. Rogers, was most helpful and clearly meets the test for "credible evidence." Thus the burden of proof shifted to the IRS which, because of its own dilatory and, indeed, self-destructive, tactics, had no evidence to offer. Although such behavior may have carried the day for the IRS in the past, this is precisely the kind of unfair advantage that section 7491 changed.

Finally, the Court notes that under the quickie refund procedure, once the taxpayer receives his tentative refund, the IRS has the responsibility to conduct an investigation into the propriety of the refund and issue an assessment for any portion to which the taxpayer was not entitled. Here there was no assessment, simply the IRS's failure to act within the abbreviated time frame requested by the IRS and agreed to by the Court.

### PRIMA FACIE VALIDITY OF THE ADMINISTRATIVE PROOF OF CLAIM

■ The IRS argues that the Administrative Proof of Claim is presumed valid and the burden is on the Debtor to overcome this presumption. There are two flaws with the IRS's position. First, as noted by the court in *In re Atcall, Inc.*, 284 B.R. 791, 799 (Bankr.E.D.Va.2002), a case also involving a tax claim, a request for

---

7. The Court cannot penalize the Committee or the witnesses for not having every answer and document necessary to respond to the IRS's questioning as they were given virtually

no prior guidance by the IRS as to the basis of the IRS' Claim. To reward the IRS for its "ambush" tactics would fly in the face of the clear legislative purpose of section 7491.

payment of an administrative expense is not the same as a proof of claim.

There are differences between requests for payment and proofs of claim. One relates to allowance. A proof of claim is deemed allowed unless a party in interest objects to the claim. 11 U.S.C. § 502(a). A properly filed proof of claim constitutes prima facie evidence of the validity and amount of claim. F.R.Bankr.P. 3001(f). A contingent or unliquidated claim may be estimated under § 502(b) if the fixing or liquidation of the claim would unduly delay the administration of the estate. None of these provisions apply to a request for payment. There is no presumption of validity of a request for payment. *Fullmer v. United States (In re Fullmer)*, 962 F.2d 1463, 1467 (10th Cir.1992). The burden of proof for the request is on the claimant. *In re Fulwood Enterprises, Inc.*, 149 B.R. 712, 715 (Bankr. M.D.Fla.1993). There is no comparable provision for estimating contingent or unliquidated administrative expenses.

█ Second, even if the Administrative Proof of Claim could be construed as the procedural equivalent of a proof of claim, the IRS has only asserted that it *may* have a claim. As it conceded in the cover letter accompanying the Administrative Proof of Claim, it does not know whether it has a claim for all or some of the tentative refund or even if it has no claim at all. "If those allegations set forth all the necessary facts to establish a claim and are *not self-contradictory*, they prima facie establish the claim. The claimant must first allege facts sufficient to support its claim...." *In re Colt Engineering, Inc.*, 288 B.R. 861, 878 (Bankr.C.D.Cal.2003) (internal citations and quotations omitted). (Emphasis added). Simply stated, the Administrative Proof of Claim is nothing more than a place holder until the IRS

could determine whether it had a claim against the Debtors and, as noted, during the period between the filing of the Administrative Proof of Claim and the trial, the IRS did nothing to determine whether it needed this place holder.

Thus the filing of the Administrative Proof of Claim gave the IRS no greater rights or presumptions that it had under the Internal Revenue Code. Even if it did, as set forth above the Court believes that the Committee produced sufficient credible evidence to shift the burden of proof to the IRS and the IRS failed to meet its burden.

## CONCLUSION

For the foregoing reasons, the Objection is SUSTAINED.

A separate order will issue.

### ORDER ON OBJECTION TO ADMINISTRATIVE CLAIM OF INTERNAL REVENUE SERVICE [# 348]

For the reasons set forth in the Memorandum of Decision Regarding the Objection to Administrative Claim of Internal Revenue Service [# 348], the Objection is SUSTAINED.